[Civ. No. 997.  Fourth Appellate District.—November 23, 1932.]

GEORGE A. LA' LIBERTY, Respondent, v. BERTHA C. LA LIBERTY, Appellant.

Porter C. Blackburn and John L. Bland for Appellant.

Dockweiler & Dockweiler & Finch for Respondent.

MARKS, J.—This is an action brought by respondent for the partition of four lots in the city of Los Angeles in which he alleges he and appellant each owned a one-half interest. The parties are husband and wife and both are of mature

age. They became acquainted in February or March, 1921, were married in January, 1923, and separated in 1926. They had both been previously married, respondent once, and appellant twice.

In August, 1922, appellant purchased two of the four lots in question here and had them conveyed to herself. During the same month she arranged to acquire, under an executory contract of purchase and sale, the two additional lots which are the subject of this action. This was about five months before her marriage with respondent. The purchasers named in the contract were "George A. La Liberty and Bertha C. La Liberty, his wife, as joint tenants with right of survivorship". The purchase price of the lots was fully paid before this action was instituted.

Shortly after her marriage to respondent, appellant deeded the two lots which had been granted to her in August, 1922, to S. A. Durfee who immediately reconveyed them to "Geo. A. La Liberty and Bertha C. La Liberty, his wife, as joint tenants". Appellant alleged in her answer that the joint tenancy deed was executed by Durfee pursuant to her instructions. She also alleged that this transaction was consummated "so as to constitute plaintiff an owner" of the property in joint tenancy with her.

By an instrument dated December 1, 1923, the parties hereto leased the property in question to the Julian Petroleum Corporation for a term of five years commencing January 1, 1924, and received from it a substantial monthly rental. All parties signed this lease.

By a deed dated November 20, 1928, respondent conveyed a one-half interest in the four lots to Elizabeth M. La Liberty, his sister, who reconveyed to him on the following day.

Respondent instituted this action seeking a partition of the four lots, and the money in a joint bank account in which the rental from them had been deposited. Appellant in her answer asserted title in the real property and the money in herself and sought to escape the legal effect of the contract of purchase of the two lots, and the deeds to the two others, because of the alleged fraud and undue influence on the part of respondent. The trial court with great particularity found all issues in favor of respondent and against

appellant and ordered a partition of the property and a division of the bank account.

The findings clearly show that the trial court was of the opinion that appellant desired to marry respondent, and to secure his consent, and prior to their marriage, agreed to convey to him a one-half interest in the real property in question, and that she carried out her part of this contract in the manner already indicated.

■ Appellant attacks the findings and interlocutory judgment as not supported by the evidence and as contrary to the evidence. She bases this contention chiefly upon the confidential relations that exist between husband and wife and the care with which the courts will scrutinize transactions between them.

The reporter's transcript contains more than 1000 pages but no good purpose could be served in detailing here the voluminous evidence on this question. It is sharply conflicting on this as well as on almost every other issue presented. However, there is ample evidence in the record to support the findings.

Appellant was left about $15,000 by her second husband. By careful and shrewd investments she had largely increased this amount during the six years that intervened between his death and her marriage to respondent. She had bought and sold real estate, showed a keen judgment of present values and sound estimates of future increases in values. At the time of her marriage to respondent, though her health was not the best, she apparently possessed good business judgment in most matters and in making investments in various properties and in managing them.

It must be borne in mind that the contract which appellant now attacks was not one made between husband and wife but was a prenuptial agreement made in contemplation of marriage. The executory contract for the purchase of the two lots was made more than five months prior to the marriage and was signed by appellant, not with her then name, but with the name which she expected to acquire with her future husband. It described the purchasers as then married. The conveyance of the other two lots by appellant to Durfee and his reconveyance of them to the parties to this action was done to carry out part of the prenuptial

agreement. The undenied allegation in appellant's answer that the reconveyance by Durfee was executed "pursuant to instructions from defendant" was undoubtedly an important factor in leading the trial judge to the conclusion that the entire transaction was free from fraud and was a voluntary act on the part of appellant, done in the performance of her prenuptial agreement.

The inferences of fraud and undue influence which require the courts to carefully examine a contract between a husband and wife, where one has gained an advantage over the other, do not necessarily apply to prenuptial contracts made when the marriage relation did not exist. The rules governing the interpretation of such marriage settlements are set forth in 13 California Jurisprudence, page 809, as follows: "Contracts or conveyances in contemplation of marriage, whereby property is promised to or settled on either or both of the parties, by either or both of the parties, or by a third party, and contracts whereby either or each of the parties releases or modifies, or agrees to release or modify, his or her property rights are called marriage settlements or contracts. Under the code and Practice Act, parties contemplating marriage have an unlimited right, in the absence of fraud or undue influence, to make before the marriage whatever stipulations in respect to property *in esse* or to be acquired they may agree upon. An agreement changing the character of property from separate to community or from community to separate may be made prior to and in anticipation of marriage, as well as afterwards. Marriage or a promise to marry is a sufficient consideration for a marriage settlement, unless the marriage is one prohibited by law. But as a promise of the grantee to live with the grantor during their joint lives is included in the marriage contract itself, it is of no consequence, and a violation thereof does not entitle the grantor to reconveyance of the property. . . . 'Marriage settlements made after marriage, unless in pursuance of ante-nuptial articles or agreements, are simply contracts between husband and wife.' "

Appellant devotes much space in her brief to arguing that she "was entitled to have the benefit of independent legal advice at the time she made the transfer of her property to her husband without which the transaction

was void'' and that ''the conduct of respondent clearly indicates a desire on his part to acquire appellant's property without consideration''. What we have already said concerning the agreement to convey the property being a prenuptial agreement entered into between the parties freely and without any fraud or undue influence on the part of respondent should be considered a sufficient answer to both these contentions. However, she urges that respondent was an attorney at law and as such did not advise her of the legal effect of her deed to Durfee and his deed of reconveyance. It is true that respondent was admitted to practice law in Michigan in 1903, but abandoned it after a few years, and has not been admitted to the bar in California. Appellant had signed and received numerous deeds and had held property in joint tenancy with another. There is ample evidence to support the trial court's conclusion that she knew what she was doing when the conveyance was made by her and the reconveyance was later made by Durfee, and was not in need of independent legal advice at that time.

The trial court found against appellant's second contention that the conduct of respondent indicated a desire to acquire her property without consideration. While the record would have supported a contrary finding, there is ample evidence to support the one made. There are letters in the record written by appellant to respondent between September 9, 1924, and March 26, 1926, which was during their marriage, indicating that a reasonable affection existed between them and that they were enjoying an ordinarily happy married life. Appellant did not leave respondent until some time in 1926. A promise to marry which is subsequently kept is sufficient consideration for a marriage settlement. (*Barnes* v. *Barnes*, 110 Cal. 418 [42 Pac. 904].)

Appellant complains of a number of the rulings of the trial court on the admissibility of certain evidence. There is no prejudicial error in any of these rulings. The lack of substantiality in appellant's position may be illustrated by a discussion of two of them.

Respondent kept a diary for more than ten years prior to and during the time of his marriage with appellant. Appellant offered the entire diary in evidence. Re-

spondent objected to its introduction as too inclusive and as covering times and matters not material to the issues of the case. However, it clearly appears that counsel for respondent was willing to have any material portion of the diary introduced, had it been offered. Further, appellant had free use of the diary in her cross-examination of respondent.

Appellant desired to testify to an alleged attack made upon her about three days after she met respondent and almost two years before they were married. She complains because the trial court excluded this evidence. If such an attack took place it should have had the effect of putting her on her guard in her future dealings with respondent. We cannot see how this evidence could be admissible under any theory.

The remaining grounds which appellant urges for a reversal of the judgment all question the sufficiency of the evidence to support the findings. The evidence is sharply conflicting, but there is competent evidence in the record to support the findings. It is the duty of the trial court to pass upon the weight and sufficiency of the evidence and the credibility of the witnesses. We cannot disturb its findings simply because of conflicts in the evidence.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.