[Civ. No. 3434.   First Appellate District, Division Two.—April 22, 1920.]

E. B. GOULD, as Special Administrator, etc., Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

[1] DIVORCE—INTERLOCUTORY DECREE—STATUS OF PARTIES.—Under the provisions of section 132 of the Civil Code, the marital status of the parties is not affected by the interlocutory decree of divorce, further than that it establishes conclusively, unless set aside on appeal or in some other manner expressly provided by statute, the right to a divorce upon the expiration of the statutory period of one year, which must elapse between the entry of the interlocutory decree and the final judgment dissolving the marriage.

[2] ID.—SETTLEMENT OF PROPERTY RIGHTS.—Husband and wife may agree in regard to their real property rights, and may change the character of community property to separate property; and a court has power to do so in an action between them where such disposition is essential to a proper determination of their relative rights.

[3] ID.—FINALITY OF INTERLOCUTORY DECREE.—The statutory interlocutory decree in divorce suits in this state is final, except as against such attack as is authorized by statute.

[4] ID.—EFFECT OF INTERLOCUTORY DECREE ON RIGHTS OF PARTIES.—An interlocutory decree of divorce so far as it determines the rights of the parties is a contract between them, temporary and provisional in its nature, but it settles the rights of the parties for the time being, and until some action, proceeding, or motion is begun to change the status and some order is made thereon which has that effect, or until they become reconciled and resume marital relations, in which event their mutual obligations are, for the time being at least, restored.

[5] ID.—INTERLOCUTORY DECREE—DEATH OF SPOUSE—TERMINATION OF MARITAL STATUS.—The death of either of the spouses after the entry of an interlocutory decree of divorce terminates the marital relationship, the entry of a final decree thereafter having no effect upon the personal status of the surviving spouse.

[6] ID.—DEATH OF HUSBAND — RIGHTS OF WIFE — SUCCESSION.—Upon the death of the husband the rights of the wife under the laws of succession, if he died intestate, are fixed, unless those rights have theretofore been changed by contract with the husband.

6. Effect on property or marital rights of death of one party before final decree of divorce, note, Ann. Cas. 1914B, 1094.

[7] ID.—INTERLOCUTORY DECREE—WHEN FINAL.—Where no appeal is taken from an interlocutory decree of divorce and it is not set aside under section 473 of the Code of Civil Procedure, it becomes final and conclusive at the expiration of six months from its entry.

[8] ID.—MOTION TO SET ASIDE FINAL DECREE—JURISDICTION—PROHIBITION.—A writ of prohibition will lie to restrain a superior court from entertaining a motion to set aside a final decree of divorce after the expiration of the time provided by section 473 of the Code of Civil Procedure.

[9] ID.—INTERLOCUTORY DECREE — DEATH OF SPOUSE — PROPERTY RIGHTS—JURISDICTION TO ENTER FINAL DECREE.—While the death of one of the spouses after the entry of an interlocutory decree of divorce and before the entry of the final decree divests the court of jurisdiction to make a final decree dissolving the marriage status, the property rights of the parties fixed by an agreement between them and confirmed by the interlocutory decree remain in existence, and as to them the court retains jurisdiction to enter the final decree in the manner specified in the interlocutory decree. (Opinion of supreme court on denial of hearing.)

APPLICATION for a Writ of Prohibition to prevent the Superior Court of the City and County of San Francisco, and E. P. Shortall, Judge, from setting aside a final decree of divorce. Writ issued.

The facts are stated in the opinion of the court.

Walter E. Drobisch and Frank Freeman for Petitioner.

Joseph A. Brown and Fabian D. Brown for Respondents.

THE COURT.—The petitioner, as the special administrator of the estate of Frank H. Gould, deceased, seeks by prohibition to prevent the superior court and the Honorable E. P. Shortall, one of its judges in San Francisco, from setting aside a final decree of divorce entered after the death of petitioner's intestate.

In his lifetime Frank H. Gould was the husband of Nettie Gould. There was one child of the marriage, a daughter who was between sixteen and seventeen years old in October, 1916, when the husband sued for divorce. After answer and cross-complaint the trial resulted in an interlocutory decree of divorce in favor of the wife. It was dated January 19, 1918. The court found there was community property which except as hereinafter stated was not described in

the findings. The divorce was granted on the ground of willful desertion by the husband. The decree recited that the parties had agreed in open court "to the division of the community property and the provision for alimony as hereinafter provided." The provisions referred to were that the husband pay the wife as permanent alimony and for her support the sum of seventy-five dollars per month, commencing on January 21, 1918; that he should pay her immediately two thousand five hundred dollars in cash; that out of the community property and the homestead there be assigned and allotted to the wife a certain lot of land in San Francisco, together with the dwelling-house and other improvements thereon and all the furniture and personal property contained therein, "the same to be her sole and separate property and estate." It was ordered that the plaintiff pay and discharge a certain encumbrance upon said real property within three years, and in the interim that he should pay all interest and other charges secured by mortgage, "it being the true intent of this decree to award said real property to the defendant, Nettie Gould, free and clear of encumbrances, but to allow the said Frank H. Gould the said period of three years from and after date hereof within which to discharge the said lien or encumbrance." All other property of the community was expressly assigned and allotted to the plaintiff free and clear of all claim of the defendant. It was further decreed that each of the parties respectively should immediately execute and deliver to the other quitclaim deeds conveying the respective property, and providing that if either party should fail or omit to make the deed within a period of ten days after the date of the decree, the clerk of the court execute the deed to carry the decree into effect. The last clause of the decree provided that upon the expiration of one year final judgment granting the defendant a divorce, "and providing for the permanent alimony and support of defendant and the division and allotment of the community property, and other relief, as hereinbefore in this interlocutory decree provided, be entered herein." The decree was recorded on January 21, 1918.

[1] Under the provisions of section 132 of the Civil Code, the marital status of the parties was not affected by the interlocutory decree, further than that it established

conclusively, unless set aside on appeal or in some other manner expressly provided by statute, the defendant's right to divorce upon the expiration of the statutory period of one year, which must elapse between the entry of the interlocutory decree and the final judgment dissolving the marriage. (*In re Seiler's Estate,* 164 Cal. 181, [Ann. Cas. 1914B, 1093, 128 Pac. 334]; *Pereira* v. *Pereira,* 156 Cal. 9, [134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488]; *Estate of Walker,* 169 Cal. 400, [146 Pac. 868]; *Brown* v. *Brown,* 170 Cal. 1, [147 Pac. 1168]; *London Guaranty etc. Co.* v. *Industrial Acc. Com.,* 181 Cal. 460, [184 Pac. 864].)

In so far as the interlocutory decree affected the property rights of the parties, it appears from the facts in the record that they agreed to the division of the community property in accordance with the terms of the decree. **[2]** Husband and wife may agree in regard to their real property rights, and may change the character of community property to separate property. A court has the power to do so in an action between them where such disposition is essential to a proper determination of their relative rights. (*Fay* v. *Fay,* 165 Cal. 469–472, [132 Pac. 1040].) **[3]** Despite the old equity rules under which preliminary interlocutory orders had none of the characteristics of final decrees, the statutory interlocutory decree in divorce suits in this state is final, except as against such attack as is authorized by statute. (*Suttman* v. *Superior Court,* 174 Cal. 243, [162 Pac. 1032]; *Bancroft* v. *Bancroft,* 178 Cal. 367, [173 Pac. 582].)

**[4]** The interlocutory decree constituted a contract between the parties, both because the provisions for division of the community property were by consent and because "a judgment is a contract, in the highest sense of the term." (*Wallace* v. *Eldredge,* 27 Cal. 498; *Stuart* v. *Lander,* 16 Cal. 372, [76 Am. Dec. 538]; *Bean* v. *Loryea,* 81 Cal. 151, [22 Pac. 513]; *Dore* v. *Thornburgh,* 90 Cal. 64, [25 Am. St. Rep. 100, 27 Pac. 30]; *Weaver* v. *San Francisco,* 146 Cal. 728, [81 Pac. 119].) The interlocutory decree so far as it determined the rights of the parties is a contract between them, temporary and provisional in its nature, but it settled the rights of the parties for the time being, "and until some action, proceeding, or motion is begun to change the status and some order is made thereon which has that effect, or until they become reconciled and resume marital

relations, in which event their mutual obligations are, for the time being at least, restored.'' (*London Guaranty etc. Co.* v. *Industrial Acc. Com., supra; Olson* v. *Superior Court,* 175 Cal. 250, [1 A. L. R. 1589, 165 Pac. 706].)

Frank H. Gould died after the entry of the interlocutory decree, and within one month after its date, on February 14, 1918, an order was made in the superior court reciting the fact that an affidavit and consent of Nettie Gould, special administratrix of the estate of Frank H. Gould, deceased, had been filed, and E. B. Gould, special administrator of the estate was substituted and made a party plaintiff in the divorce action. On January 23, 1919, two days after the expiration of the year following the entry of the interlocutory decree, on the court's own motion, the final decree of divorce was entered. It embodied all the provisions of the interlocutory decree. On January 4, 1920, Nettie Gould moved in said court for an order setting aside the final decree of divorce, which motion remained under submission until the application for writ of prohibition was filed in this court and the alternative writ issued on March 13, 1920, more than one year after the entry of the final decree.

[5] The death of the husband terminated the marital relationship. The entry of the final decree thereafter had no effect upon the personal status of the surviving wife. (*Estate of Seiler, supra; Estate of Dargie,* 162 Cal. 51, [121 Pac. 320].) [6] Upon the death of the husband the rights of the wife under the laws of succession, if he died intestate, were fixed, unless those rights had theretofore been changed by contract with the husband. [7] Since no appeal was taken from the interlocutory decree and it was not set aside under section 473 of the Code of Civil Procedure, it became final and conclusive at the expiration of six months from its entry. It was a contract in regard to the community property. It is not necessary, nor would it be proper on this proceeding, to determine the legal effect of the contract evidenced by the interlocutory decree upon the property rights, if any, which vested in the wife on the death of the husband. It may be in a proper proceeding that it will be necessary for a court called upon to construe the interlocutory decree to determine whether the transfer of the property to the wife and her waiver of claim against

other property of the husband barred her from claiming in his estate any property under the laws of succession or whether the legal effect of the decree was simply to convert the portion of what had theretofore been community property into separate property of the husband in which, if he died intestate, it may appear that she has a heritable right. These statements are not to be understood as conveying any expression of opinion on the part' of this court upon these matters, but as a basis for the conclusions reached in regard to the power of the trial court to enter the final decree or to set it aside.

Because this court on this proceeding cannot determine the legal effect of the interlocutory decree, it must, under well-established rules, indulge in every presumption in favor of the action of the trial court in entering the final decree, if, indeed, that action requires support by presumption. In the absence of a showing to the contrary, it must be presumed that the deeds, required to be executed within ten days after the interlocutory decree was made, were in fact executed, and that to forestall any doubt which might arise as to the vesting of title under such deeds or pursuant to the interlocutory decree, the final decree was entered. It does not seem necessary either to indulge in presumption upon this subject or to consider the reason which may have actuated the trial court to enter the final decree. The last clause of section 132 of the Civil Code, as amended in 1915, expressly provides that "the death of either party after the entry of the interlocutory judgment does not impair the power of the court to enter final judgment as hereinbefore provided." Since the marriage was not dissolved by the entry of the final decree, but by the death of the husband, and since the interlocutory decree established the property rights to the extent above indicated, it would appear on the one hand that the entry of the final decree accomplished nothing; on the other, that it injured nobody. While the law neither does nor requires idle things, it cannot be said that, when the legislature expressly reserved the power in the court to make the final decree, it was an idle act. Under the code section, it is concluded that the court had jurisdiction to enter the final judgment.

[8] The decree not having been set aside until more than one year had elapsed, the application for the writ of prohibi-

tion is based on the ground that to grant the pending motion is beyond the jurisdiction of the trial court. The respondents resist the granting of the writ solely on the ground that a judgment which appears on its face to have been made without jurisdiction is void, and may be attacked at any time. The conclusion that the trial court had jurisdiction to make the final decree disposes of the respondents' contention. The time having expired within which the trial court might have set aside the final decree under section 473 of the Code of Civil Procedure, on motion, it has lost jurisdiction to entertain such a motion. (*Byrne* v. *Hoag,* 116 Cal. 1, [47 Pac. 775].)

Let the peremptory writ of prohibition issue as prayed for by the petitioner.

All the Justices concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 21, 1920, and the following opinion then rendered thereon:

THE COURT.—The petition for rehearing is denied.

The opinion of the district court of appeal does not mention the decision given by the district court of appeal of the second district filed on October 30, 1919, in *Gloyd* v. *Superior Court,* 44 Cal. App. 39, [185 Pac. 995]. In that case a petition for a rehearing was denied by the supreme court. It is claimed in the present petition for rehearing that the opinion in this case is directly contrary to that in the Gloyd case. We think there is a clear distinction between them and one which takes away any apparent conflict. In the Gloyd case the interlocutory decree of divorce was a simple declaration that the husband, who was plaintiff, was entitled to a divorce. It did not purport to adjudicate property rights of any character. It was there held that in such a case, upon the death of the plaintiff during the ensuing year, the superior court lost jurisdiction to proceed further in the case, because the death dissolved the marriage and extinguished the pre-existing marriage status which formed the subject matter of the action, leaving nothing upon which the only final decree that could be made could operate.

[9] In the present case the interlocutory decree not only declared that the wife, who was cross-complainant, was entitled to a divorce, but also purported to confirm and provide for the performance of an agreement made by the husband and wife in open court dividing the community property between them and providing for the payment to the wife by the husband of a permanent monthly sum for her support. It was held that although the court may have lost jurisdiction to make a final decree, after the death of the husband, dissolving the marriage status, the property rights fixed by the agreement and confirmed by the interlocutory decree still remained in existence, and that as to them the court retained jurisdiction to enter the final decree in the manner specified in the interlocutory decree. Inasmuch as a husband and wife may, even if no divorce action is pending, make such contracts as they may choose respecting property (Civ. Code, sec. 159), such contracts, whether made in an action for divorce or otherwise, are valid, and the rights thereunder do not of necessity cease upon the death of either party. Consequently, the subject matter of the interlocutory decree, so far as such rights are concerned, was not extinguished by the death of Gould during the year succeeding the interlocutory decree and the court to that extent retained jurisdiction. This distinction is clearly indicated in the opinion of the district court and it was also intimated in the Gloyd case, although in that case it was not necessary to say what the result would be as to the property relations, inasmuch as none had been adjudicated by the interlocutory decree.

Shaw, J., Olney, J., Sloane, J., Lawlor, J., and Lennon, J., concurred.

Angellotti, C. J., and Wilbur, J., dissented from order denying hearing.