[Civ. Nos. 20929, 21096. Second Dist., Div. One. Feb. 15, 1956.]

EDYTHE MARRENNER BARKER, Plaintiff and Appellant, v. JESSE T. BARKER, Defendant and Appellant.

[Two cases.]

Gang, Kopp & Tyre, Martin Gang and Milton A. Rudin for Plaintiff and Appellant.

Hahn, Ross & Saunders for Defendant and Appellant.

THE COURT.—Defendant appeals from a judgment decreeing that plaintiff is entitled to a divorce, and further decreeing that certain property is her separate property and not property of the community.

Plaintiff appeals from that part of an order made in the court below directing plaintiff to pay to defendant as attorney's fees on this appeal the sum of $7,500.

Responsive to issues tendered by the complaint and answer, the trial court made findings of fact which, insofar as pertinent to this appeal, may be summarized as follows:

Plaintiff and defendant were married on July 23, 1944, and separated on July 17, 1953; that there were two children

born of the marriage; that the defendant was guilty of extreme cruelty and had caused plaintiff grievous mental and physical suffering without fault on her part. The court made detailed findings as to these acts of cruelty. Included in these acts were instances of physical attack upon, and resultant injury to the plaintiff, these instances occurring both before and after their separation. The court further found that it was not true that the plaintiff had treated the defendant in a cruel and inhuman manner or caused him grievous mental or physical suffering; that the plaintiff was a fit and proper person to have custody of the minor children and that they should be awarded to her with the right of reasonable visitation in the defendant, the extent of these rights being set forth in detail; that immediately prior to the marriage plaintiff and defendant entered into a written antenuptial agreement; that it is not true that plaintiff procured defendant's execution of said antenuptial agreement by duress, undue influence or fraud, and it was not true that said agreement had been cancelled or abrogated; that it is true that said agreement had remained in full force and effect during the marriage of plaintiff and defendant; that certain real and personal property, which is specifically described, was the separate property of the plaintiff and that certain personal property, specifically described, was the separate property of the defendant; that all property, real or personal, standing in the name of plaintiff or under the possession or control of plaintiff, including the items of property real and personal which were specifically described as heretofore mentioned, were the separate property of plaintiff, and that all personal property standing in the name of defendant, or in his possession or under his control, including but not limited to that specifically described, was the separate property of the defendant; that the household furniture and furnishings located in the residence of plaintiff and the Ford station wagon registered in the name of the defendant were community property, and that the household furniture and furnishings should be awarded to the plaintiff and the station wagon to the defendant; that all of the property of the plaintiff had been acquired from her earnings prior to or subsequent to marriage, and that the defendant had relinquished control to plaintiff of her earnings during the marriage, and that all of her earnings were her separate property; that for the calendar years 1945 to 1952 inclusive, income tax returns were prepared on behalf of plaintiff and

defendant, and that said tax returns included the earnings of plaintiff and the earnings of defendant, and that such earnings were reported in joint income tax returns; that plaintiff paid all taxes payable under said income tax returns, except such portion of said tax as had been withheld from the earnings of defendant by his employer, and that such payments were made by plaintiff out of her earnings; that in filing such income tax returns and in making payment of said taxes, the plaintiff did not intend to transmute her separate property into community property, and that the making of said returns and the payment of said taxes did not transmute the separate property of plaintiff into community property; that said income tax returns were prepared by plaintiff's business manager without direction from plaintiff and without any knowledge on the part of plaintiff as to any significance between filing joint income tax returns and filing separate income tax returns.

By the interlocutory decree entered, the court decreed that the plaintiff was entitled to a divorce; that the defendant was enjoined from entering plaintiff's residence except pursuant to his rights of visitation upon the minor children, as granted by the decree. The custody of the minor children was awarded to the plaintiff, with rights of visitation in the defendant, which were fixed in detail. It was further decreed that all real and personal property standing in the name of or in the possession or in the control of plaintiff, including but not limited to certain property specifically described in the decree, was the sole and separate property of the plaintiff, and that all personal property standing in the name of or in the possession of or under the control of the defendant, including but not limited to said property therein described, was the separate property of the defendant. The decree awarded the household furniture and furnishings to plaintiff, and the Ford automobile to the defendant. It decreed that the antenuptial agreement was a fair and equitable agreement and was a valid and existing agreement between plaintiff and defendant and not void as against public policy. It was further decreed that the plaintiff was entitled to retain, as her sole and separate property, refunds, if any, of income taxes paid by plaintiff for the calendar years 1945 to 1952, both inclusive, and defendant was directed, at the request of plaintiff, to "transfer to plaintiff as her sole and separate property, all his interest in claims for refunds of such income taxes, and to take such further action, execute and file all

documents and other instruments which may be necessary, proper or expedient to evidence said transfer and to make such claim or claims for refund of such income taxes.'' Plaintiff was ordered to pay any assessment of additional taxes with respect to the income of plaintiff and defendant for said years, except such portion thereof as might be due to the failure of defendant to report income for those years.

We have carefully examined the record in this matter and find that all of the findings, with the exception of one hereinafter mentioned, are fully supported by the evidence.

Defendant makes nine assignments of error. Seven of them are without merit, and the remaining two do not demonstrate any prejudicial error.

Appellant asserts that the trial court was without jurisdiction to order the defendant to sign and file claims for refund of income taxes, which refunds the court had found were plaintiff's separate property.

█ In a divorce proceeding the trial court does not have jurisdiction to award the separate property of one party to the other. (*Allen* v. *Allen*, 159 Cal. 197 [113 P. 160] ; *Fox* v. *Fox*, 18 Cal.2d 645 [117 P.2d 325] ; *Conard* v. *Conard*, 5 Cal.App.2d 91 [41 P.2d 968].)

In a divorce proceeding, however, the court must, if the issue is tendered by the pleadings, try the issue of title to property between the parties, that is, decide whether certain property is the separate property of one of the parties or the joint or common property of the parties or community property. Here the complaint alleged that there was no community property and that all property, both real and personal, in plaintiff's possession was her sole and separate property. The answer denied this allegation and affirmatively alleged that certain specified property in the possession of the plaintiff was community property and that other additional community property in plaintiff's possession, the nature and extent of which was unknown to the defendant, was community property. The parties thus tendered to the court the issue of the title to the property in question and the court had jurisdiction, and it was its duty, to determine that issue and to quiet the title of the parties accordingly. (*Huber* v. *Huber*, 27 Cal.2d 784, 793 [167 P.2d 708] ; *Hopkins* v. *Detrick*, 97 Cal.App.2d 50 [217 P.2d 78] ; *Citizens Nat. T. & S. Bank* v. *Hawkins*, 87 Cal.App.2d 535, 541 [197 P.2d 385] ; *Mergenthaler* v. *Mergenthaler*, 69 Cal.App.2d 525, 528 [160 P.2d 121].)

When the pleadings in an action for divorce tender the issue as to whether certain property is the separate property of one of the parties, or community property, they present to the court a cause of action to quiet title. (*Huber* v. *Huber*, *supra*, 793) and thus invoke the equity powers of the court. ▉ A court of equity will, when its powers are invoked, dispose of all issues with respect to the property as to which they are invoked, and make such orders as are necessary to make its decree effective. (*Mergenthaler* v. *Mergenthaler*, *supra*, 528[1]; *Rolapp* v. *Federal Bldg. & L. Assn.*, 11 Cal. App.2d 337, 342 [53 P.2d 974].)

In the case at bar the court had held that the taxes on account of which refunds might be made had been paid by the plaintiff out of her separate property and that such refunds were her separate property. Certainly a court of equity should not leave the plaintiff to some other proceeding to enforce her rights to these refunds. It having been adjudged that the plaintiff was the owner of the refunds, defendant is not injured by being compelled to sign and cause to be filed claims for refund presented to him by the plaintiff in order that she may reduce her property to her possession.

Appellant's second point is that the antenuptial agreement between the parties is against public policy and therefore void. Appellant asserts that the purpose of this agreement was to relieve him of the responsibility of supporting plaintiff and therefore relieve him of that marital obligation. He bases this upon the testimony of the plaintiff that that was one of the purposes of the agreement. The court found, however, that the agreement was voluntarily entered into and that it was a valid and existing agreement. As we have heretofore said, this finding is supported by substantial evidence. The agreement itself does not in anywise affect the marital obligations of either party to support the other, either during marriage or by way of alimony in the event of divorce. It does not deal with the subject of support, or with divorce or alimony, costs, or attorney's fees in event of separation and an action for divorce; it deals solely with property rights. There is substantial evidence that the defendant fully understood the purposes and the effect of the agreement at the time he signed it, and the evidence shows that the parties, during the entire period of their marriage, meticulously observed the terms of the agreement.

---

[1]It is of interest to note that counsel for appellant here successfully advanced this proposition in the cited case.

■ Parties contemplating marriage may validly contract as to their property rights, both as to property then owned by them and as to property, including earnings, which may be acquired by them after marriage (*Estate of Wahlefeld,* 105 Cal.App. 770, 775 [228 P. 870]; *Thorpe* v. *Thorpe,* 75 Cal.App.2d 605 [171 P.2d 126]; *La Liberty* v. *La Liberty,* 127 Cal.App. 669 [16 P.2d 681]; *Snyder* v. *Webb,* 3 Cal. 83; 13 Cal.Jur. tit., Husband and Wife, § 17, and cases cited), and the codes provide for such agreements (see Civ. Code, §§ 177-181; see also Prob. Code, § 70).

Appellant relies on *Barham* v. *Barham,* 33 Cal.2d 416 [202 P.2d 289], and *Whiting* v. *Whiting,* 62 Cal.App. 157 [216 P. 92]. Neither of these cases is in point. In neither are antenuptial agreements held invalid. In both cases, only those portions of antenuptial agreements which purported to relieve the husband from the obligation to support the wife, or to pay alimony in the event his own wrongdoing terminated the marriage and entitled the wife to alimony, were held against public policy. Clearly, these cases have no application to the contract here.

Appellant asserts that inasmuch as plaintiff and defendant made income tax returns for the years 1945 to 1952 on the basis that their earnings were community property, they thereby transmuted the separate property of the plaintiff into community property.

For the years 1945 to 1951, both inclusive, the parties filed split income tax returns in relation to both their state and federal income taxes. This they were not entitled to do as to federal taxes, except insofar as the income was community property, prior to 1948, nor as to their state income tax prior to 1951. Defendant argues that plaintiff, by declaring her earnings to be community property in the returns during the year in which she was only entitled to the benefit of a split return if her earnings were community property, transmuted them into community property. He cites, to uphold this proposition, the following cases: *Estate of Raphael,* 91 Cal.App.2d 931 [206 P.2d 391]; *Stice* v. *Stice,* 81 Cal.App.2d 792 [185 P.2d 402]; *Heck* v. *Heck,* 63 Cal.App.2d 470 [147 P.2d 110]; *Frymire* v. *Brown,* 94 Cal.App.2d 334 [210 P.2d 707]; *Handley* v. *Handley,* 113 Cal.App.2d 280 [248 P.2d 59]; *Estate of Cummins,* 130 Cal.App.2d 821 [280 P.2d 128]. None of these cases holds that the return of separate property as community property in an income tax return

establishes a transmutation of the property. They only hold that the act of making such tax returns is evidence of transmutation. There is nothing in any of the opinions in these cases that could lead anyone to the conscientious belief that they held anything further than what we have stated, or that they uphold defendant's contentions that the filing of a community income tax return transmuted separate property into community property. Counsel for the defendant, in their brief, did not direct this court's attention to the cases of *Balkema* v. *Deiches*, 90 Cal.App.2d 427 [202 P.2d 1068], or to *Hopkins* v. *Detrick, supra,* 97 Cal.App.2d 50, although both of them had been called to their attention by briefs filed in the trial court. Both of these cases hold that the filing of income tax returns stating that certain property is community property does not establish transmutation, and in each of them the appellate court upheld a judgment that there was no transmutation, although the evidence established the filing of returns such as the ones in question here. In the case at bar there was ample evidence to sustain the finding of the trial court that the property in question was the separate property of the plaintiff and its implied finding that there had been no transmutation.

Appellant argues that the antenuptial agreement was cancelled by oral agreement of the parties. The trial court found to the contrary, and while there was a conflict in the evidence, there was substantial evidence to support the finding of the trial court. There is no merit in this contention of appellant, and it would serve no useful purpose to here discuss the conflicting evidence.

Appellant attacks the omnibus clauses of the findings and judgment that all property standing in plaintiff's name, or in her possession or under her control, and which is not described in either the findings or the decree, is her separate property. It is probably true, as appellant contends, that it was error for the court to enter a decree as to the title to property concerning which there had been no pleading or proof and which is unidentified in the findings or judgment, although it may be said that this portion of the findings and judgment merely declares that which is, undoubtedly, the effect of the antenuptial agreement between the parties.

But assuming the error, we cannot see how the defendant has been injured by this omnibus clause in the findings and decree, nor has he attempted to point out how he is injured.

He does not assert that plaintiff is in the possession or control of any property that he is the owner of or in which he has an interest, other than his unfounded claim to an interest in plaintiff's property which is specifically described in the decree. In fact, in his affidavit in support of his application for attorney's fees upon this appeal, he states he has no property. The finding in question and the decree, insofar as it follows that finding, could not, therefore, adversely affect defendant. ▉ Appellant is not entitled to complain of an error which does not adversely affect him.

Defendant further asserts that plaintiff is not entitled to a divorce because of false testimony produced by her. What defendant really is arguing is the weight of the evidence upon the issue of his cruelty. While the evidence was conflicting, the matter of the credibility of the witnesses was one for the determination of the trial court and not for this court. Appellant's contention is devoid of merit.

▉ Appellant complains because the interlocutory decree restrains him from entering plaintiff's residence except under certain defined conditions. The interlocutory decree of divorce terminated the personal relations between the parties and made it lawful for plaintiff to live separately and apart from defendant. (*Estate of Walker*, 180 Cal. 478, 479 [181 P. 792]; *Stauter* v. *Carithers*, 185 Cal. 160, 163 [196 P. 37].) In the aid of its decree terminating the personal relations of the parties, the court had the power to protect plaintiff in the enjoyment of the right to live separately and apart from and free from interference by defendant. The evidence showed that both immediately prior to and after the separation of the parties, the defendant had subjected the plaintiff to physical violence, and the court had the power to protect the plaintiff against a repetition of such acts. Further than this, plaintiff's home was her own property, in which defendant had no interest, and after the entry of the interlocutory decree defendant had no right to enter it and cannot be injured by a decree which prevents him from doing something he has no right to do, and the doing of which would be in violation of the rights of the plaintiff. The injunction granted falls clearly within the provisions of both paragraphs 1 and 3 of section 526 of the Code of Civil Procedure.

Appellant asserts that the trial court erred in finding that two pieces of property were community property. The tenor of his argument is that the trial court found the antenuptial

agreement to be in full force and effect, and under the provisions of the antenuptial agreement, all property earned, acquired, purchased or received should be the separate property of the person who earned it, and that as two pieces of property which were found to be community were purchased with the earnings of the plaintiff, it was inconsistent to find them to be community property. Our examination of the record convinces us that the court erred in finding that the property in question was community property. The evidence shows, without conflict, that the property was purchased with the separate funds of the plaintiff and was her separate property.

 But certainly defendant is not injured, and is in no position to assert error, inasmuch as the error resulted in his getting that to which, under the evidence, he was not entitled. Plaintiff here concedes, however, that while there was no evidence of a gift, it was her intent to make a gift of the Ford station wagon to the defendant. Without this concession, this court would be justified in correcting the finding and modifying the judgment in accordance with the unconflicting evidence that both pieces of property were plaintiff's separate property. But, as the effect of the judgment is no different than it would have been had the court found in accordance with the evidence and plaintiff's concession, an amendment to the findings and a modification of the judgment would serve no useful purpose.

### PLAINTIFF'S APPEAL

 Plaintiff appeals from the order of the trial court awarding to defendant's counsel $7,500 for services upon this appeal. Plaintiff does not question the inability of defendant to pay these fees, nor her ability to pay them.

Although plaintiff states but two points in her brief, her attack upon the order is in reality threefold: First, that the defendant's appeal was not meritorious and therefore not in good faith; second, that the trial court was obligated, in fixing the fees, to determine whether the appeal was meritorious, and that it failed to consider that question in making its order; and third, that the fees awarded were excessive.

We will discuss these three points in reverse order.

We have come to the conclusion that the fees awarded by the trial court were excessive. The questions involved upon this appeal were not complicated. Of the nine assignments of error made by the defendant three of them involved, in reality, only questions as to the weight of the evidence or the credibil-

ity of witnesses. These assignments of error are stated by the defendant in his opening brief as follows:

## "III

"The filing by plaintiff wife and defendant husband of income tax returns from 1945 to 1952 on a community property basis did transmute separate property of the parties into community property.

## "IV.

"The parties orally agreed that all earnings and property should be community property and performed the agreement by signing community property income tax returns."

## "VII.

"The plaintiff was not entitled to divorce because of false testimony produced by her."

As to assignment three, it is clear that the question as to whether there had been transmutation of plaintiff's separate property into community property was a matter to be determined by the trial court in the light of all of the evidence, not simply in the light of the income tax returns.

The question raised by assignment of error number four likewise presents solely a question of fact which under conflicting evidence was determined adversely to defendant. There being substantial evidence to uphold this finding, this court is without power to change it. What we have said as to assignments three and four is equally true of assignment of error number seven.

The services for which fees may be allowed in a matter such as this are fees for services that are necessary in prosecuting the appeal. Certainly no fees should be allowed for services rendered in presenting points on appeal which, under the established law, are not open for decision by the appellate court.

Points five and six[2] concern errors in the findings and decree, but these are errors which, as we have pointed out, do not adversely affect the defendant. Certainly the successful party in litigation should not be required to pay the attorney

---

[2] "V. The trial court erred in finding that all property in the plaintiff's name, or used by the plaintiff or in her possession or control including but not limited by particular items, is the separate property of plaintiff.
"VI. It is reversible error for the court to find valid an ante-nuptial agreement making all property separate property and also find two pieces of property as community property."

for his adversary for calling to the attention of an appellate court errors as to which the adversary is not entitled to redress.

This leaves as the only assignments of error which can possibly be said to involve matters of substance, assignments one, two, eight and nine.[3] We have discussed all of these assignments, except assignment nine, in the portion of this opinion which disposes of defendant's appeal, and what we have there said demonstrates how little merit there was in any of the three points discussed.

Point nine is, in reality, without substance. So far as separate property is concerned, the interlocutory decree quieting the plaintiff's title to her separate property was a final decree, and the only decree by which the trial court could dispose of the issue. As to that issue, the decree is not interlocutory, as it is insofar as the issues of the dissolution of the marriage, alimony, custody of the children and communty property are concerned. It is true that the trial court did, by the wording of its decree, make a present disposition of two items of property which it found to be community, but as we have heretofore pointed out, its finding that this property was community was contrary to all of the evidence and the defendant was the gainer by the form of the decree entered. Certainly, the services rendered and the research necessary to present this point to the appellate court, and the writing of two paragraphs by which it is presented in the brief, do not justify any large fee.

■ We do not want to be understood as holding that it is the success of an appeal which is determinative of the reasonableness of the fees fixed by the trial court. The majority of records on appeal present questions upon which counsel of equal competence might reasonably hold opposite views, but we reiterate that services performed in raising questions which are not of real substance should not be the basis for compensation. To make them such invites not meritorious appeals, but appeals to secure the benefit of the fees granted.

---

[3] "I. The court cannot order the defendant to execute documents and file claims for refund of separate property income taxes for plaintiff.

"II. The purported ante-nuptial agreement is against public policy and thus it is not a valid or a binding agreement."

"VIII. It was error for the court to permanently restrain defendant from entering plaintiff's residence.

"IX. The trial court may not make a present disposition of property in the interlocutory decree but must make the assignment at the time of the final decree."

The excessiveness of the fees granted here is further emphasized by the fact that the opening brief on appeal is very apparently but a condensation of the very full brief filed by counsel for the defendant in the trial court, so that there need have been but a comparatively small amount of time given to research or review of the record.

We think this case demonstrates the wisdom of the Legislature in amending section 137.3 of the Civil Code so as to permit fees such as this to be allowed and the amount thereof fixed, in whole or in part, after the services have been performed. When the trial court exercises its discretion and postpones the fixing of fees, it can act on evidence of the services actually 'performed, the necessity for the services, and the benefit accruing to the client; if, as in the case at bar, it acts before the performance of the service, its order must, of necessity, be largely based on speculation.

Our study of the transcript of the oral proceedings convinces us that the trial court did not take into consideration, in making the order appealed from, the question as to whether defendant's appeal was meritorious.

When defendant's application first came on for hearing, the question arose as to defendant's refusal to make joint income tax returns with the plaintiff as to the taxable years 1953 and 1954, and any other years in which income tax returns might be filed prior to the entry of the final decree. Plaintiff had at that time filed returns for the years 1953 and 1954, but it was the position of counsel for the plaintiff that amended joint returns could be filed which would result in refunds in excess of $10,000, and during the colloquy between court and counsel the court stated, in part, as follows:

"THE COURT: Let me clarify your mind and my thinking. I'm not *going to concern myself too much about the merits of the appeal, because I feel a man has a right to appeal.* While I feel very strongly the case has been decided right, or I wouldn't have decided it that way, I still don't think a person should be denied the right of appeal. I do not believe I will deny him the right on account of it not being a meritorious appeal, because I feel that probably in his mind, and Mr. Hahn's mind it is a meritorious appeal; it's not frivolous; I'm pretty sure of that. [Emphasis added.]

"The only thing I'm thinking about is whether or not he can have funds, other funds, available for that purpose.

"Now, I have indicated to you my thinking. I think that

the man is being stubborn, and that is what it amounts to, and if he weren't so stubborn, he could have the money.

. . . . . . . . . . .

"I won't deny it because the appeal is not meritorious. I haven't said I'm going to grant him anything either.

. . . . . . . . . . .

"Of course, as I said, and as I have told you, I don't think I would deny the man the right to take an appeal. I can't deny that. All I can say is that *the lady is not going to pay for it. . . .* In other words, I wouldn't deny the award on the fact that *the appeal was not meritorious, because I don't think it should be.* The question in my mind is whether or not he has available funds, or could, if he got away from that stubbornness, have available funds." (Emphasis added.)

At the conclusion of the hearing of the application, the matter was continued for two weeks in order to enable the parties to arrive at some agreement. The parties did arrive at a stipulation, the details of which are set forth in the opinion of Mr. Justice Doran, wherein he denied defendant's motion to dismiss the appeal.[4] Briefly stated, the parties agreed that defendant would join with plaintiff in executing amended tax returns for the years 1953 and 1954, and for such future years as the parties should be entitled to file such returns; that plaintiff would deposit the amount of any refunds obtained through the filing of the amended tax returns in a special fund, and would likewise deposit in that fund any savings made by her in future tax years for which joint returns were filed; that she would advance to the defendant his costs on the appeal, the balance of the attorney's fees awarded him by the interlocutory decree, and would pay, when due, from her own assets, any other fees ordered paid; that she should have a right to the repayment of the amount so advanced out of that fund, or the right to offset against future deposits in the fund, and that any amounts remaining in the fund after the payment of defendant's costs on appeal and attorney's fees, and her repayment of plaintiff's advances, should be held by her and invested in government bonds for the benefit of the children. When the hearing

---

[4] *Barker* v. *Barker,* 133 Cal.App.2d 741 [284 P.2d 900]. It was there held that this stipulation did not constitute a promise on plaintiff's part to pay any fees that the court might thereafter order, but that the questions of whether or not defendant's appeal was meritorious, or the fees awarded excessive, were to be determined on their merits.

upon the application was resumed and the stipulation of the parties was presented, the court made the following comments relevant to the question we are now considering (after statement by counsel for defendant as to the defendant's earnings during the year 1954, the court said):

"THE COURT: Well, of course, that wasn't what is concerning the Court. He has a possibility of getting a considerable amount of money if he wasn't so stubborn. That's the point the Court tried to make to you the last time, Mr. Hahn. It seems to me he has a perfectly good, legal process, by which he could get plenty of money to take care of your fee."

Later, during the proceedings, the court said:

"THE COURT: To be very candid, Mr. Hahn, I don't particularly relish a wife having to pay for her husband's freight. That's the reason I asked the question. Is this dependent on her paying what she gets back on income tax, or does she have to pay it anyhow? That's why I asked the question."

It seems apparent to us that the trial court, in making the order appealed from, was acting under two misapprehensions; first, that the defendant was entitled to attorney's fees as a matter of right on the appeal, irrespective of the merits of his appeal, and that therefore the court need not consider the question of merit. That this view was erroneous is firmly established. ■ An appeal may be a matter of right, but an appeal at the expense of one's adversary is not a matter of right. It is only when the appeal is taken in good faith, that is, with a reasonable belief that it has merit, that attorney's fees or costs may be awarded. (*Stewart* v. *Stewart*, 156 Cal. 651 [105 P. 955]; *Kellett* v. *Kellett*, 2 Cal.2d 45, 49 [39 P.2d 203].)

The second matter as to which the court, we believe, was under a misapprehension is that the fees that the court ordered paid were payable out of a fund in which the defendant had a vested interest. It is true that the fund created by the stipulation of the parties would not have come into being had defendant insisted on playing "dog in the manger," but the fact that he consented to joint income tax returns would not make the refunds, or the savings created by such returns, his property. All taxes paid came from plaintiff's separate funds and the refunds were payable to her and not to the defendant, and were her property and not defendant's. The fund, except so far as expendable

for defendant's costs on appeal and attorney's fees, was, by the terms of the stipulation, applicable in discharge of an obligation which the interlocutory decree had placed upon the plaintiff—that is, the entire support of the parties' children.

The order appealed from compels the payment of the fees in question by plaintiff, and that is what the trial court emphatically declared that it would not do.

While it is difficult to believe that counsel as experienced in litigation of this kind as are counsel for defendant could entertain a reasonable belief that this appeal is meritorious, yet inasmuch as the trial court has not passed upon that question we leave the question an open one to be decided by it.

The judgment appealed from is affirmed. The order appealed from is reversed, with directions to the trial court to rehear defendant's petition for attorney's fees on appeal and to grant such fees, if any, as it may find attorneys for defendant are entitled.

A petition for a rehearing was denied March 12, 1956, and the petition of defendant and appellant for a hearing by the Supreme Court was denied April 11, 1956.