[L. A. No. 27957. In Bank. Dec. 8, 1964.]

JAMES R. McCLENNY, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; FARMERS AND MERCHANTS TRUST COMPANY OF LONG BEACH, as Special Administrator, etc., et al., Real Parties in Interest.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Brock & Shapero, Edwin S. Saul and Martin M. Shapero for Petitioner.

No appearance for Respondent.

James A. Hayes, John D. Miller and Clyde L. Bronn for Real Parties in Interest.

DeMeo, DeMeo, Foster & Waner and J. N. DeMeo as Amici Curiae on behalf of Real Parties in Interest.

TOBRINER, J.—In this proceeding James R. McClenny, defendant in a divorce action initiated by Dora S. McClenny, now deceased, filed his petition for a writ of mandate to compel the termination of a receivership currently holding the McClennys' property and for a writ of prohibition to prohibit the Superior Court of Los Angeles County from proceeding to try title to such property. For the reasons hereinafter set out we hold that the writs should be denied.

On October 5, 1961, Dora S. McClenny filed an action in the Superior Court of Los Angeles County against James R. McClenny, seeking divorce on the ground of extreme cruelty and requesting the court to award her all of the community property of the parties. During the course of the hearings the court ordered petitioner to pay for the support of a minor child in Mrs. McClenny's custody, as well as to discharge Mrs. McClenny's medical, hospital and other expenses. Upon petitioner's failure to comply with these orders, the court appointed a receiver to take possession and control of all of the assets of both parties in order to insure payment of the above expenditures. The court later expanded this order vesting in the receiver title to all assets and properties of the parties.

On December 17, 1962, the court entered an interlocutory judgment of divorce in favor of Mrs. McClenny upon the ground of extreme cruelty, but reserved its power to determine the division of the community property.[1] On August 7, 1963, following the date of the interlocutory divorce decree but prior to any hearings or decisions concerning the rights of the parties in the involved property, Mrs. McClenny died.

---

[1] The judgment provided among other matters: "The Court reserves power to make such further orders as are necessary and proper from time to time concerning the receiver, the receivership estate and the division of the community property of the parties." In his answer to Mrs. McClennny's first amended complaint, petitioner admitted her community interest in some of the properties but denied any community interest in other properties.

On August 13, 1963, the Farmers and Merchants Trust Company of Long Beach, as special administrator of Mrs. McClenny's estate, sought to intervene in the divorce action, alleging that Mrs. McClenny had willed her property to it in trust for the benefit of the McClennys' three minor children. The trust company further requested the superior court to render a decision upon the disposition of the property held by the receiver, including several hundred acres of land in Tulare and Kern Counties.

Petitioner urged the court to strike the trust company's complaint in intervention, dismiss the action, and wind up the receivership upon the ground that the death of Mrs. McClenny abated the divorce action and deprived the superior court of jurisdiction to adjudicate the rights of the parties in the community property. The court denied petitioner's motions;[2] however, subsequent thereto it granted the trust company's motion to be substituted as plaintiff in place and stead of the deceased wife, thus making the question of intervention moot.

The principal issue in this case thus turns upon whether the Superior Court of Los Angeles County retains jurisdiction to try title to the property held by the receiver and to allocate to Mrs. McClenny's estate more than one-half of the community property. We have concluded that the death of Mrs. McClenny did not deprive the trial court of jurisdiction to do so. We have likewise decided that petitioner's secondary con-

---

[2]On September 4, 1963, petitioner sought writs of mandate and prohibition to compel the superior court to dismiss the action, immediately terminate the receivership, and preclude the trust company from intervening. In its opinion denying the writ the District Court of Appeal (*McClenny* v. *Superior Court* (October 11, 1963) 221 Cal.App.2d 125 [34 Cal.Rptr. 287]) noted that during oral argument petitioner had altered his position requesting immediate termination of the receivership, and was now asking only that " 'the court in the divorce action not determine the community interest, if any, of the estate. . . .' " Petitioner further stated at that time that it was agreeable to him "that the receiver retain possession until the community interest be determined . . . in the proper forum." The District Court of Appeal denied petitioner's application upon the ground that the trial court had committed no error in refusing to grant petitioner's motions seeking immediate entry of judgment and termination of the receivership, particularly in view of the statement by the trial court, as reported by counsel for the receiver during oral argument before the District Court of Appeal, that the trial court did not intend to try title and divide the community property.

In the instant proceeding petitioner complains that since the decision of October 11, 1963, the superior court has failed to terminate the divorce action and dissolve the receivership, but in fact intends to try title to the property and continue the receivership until such property rights are determined. Defendant thus seeks the same relief denied him as unnecessary in the prior District Court of Appeal decision.

tention, that we require the termination of the receivership, cannot be sustained.

The problem that confronts us is one of the consequences of the long-accepted bifurcation of the divorce trial as to the right to the divorce and as to the disposition of the property of the parties. This court, over a half-century ago, said: "Unquestionably the court would have power under the present law, as it always has had the power under previous laws, to postpone the trial and decision of the property rights and custody of the children to any reasonable time after the rendition of the judgment of divorce, whether interlocutory or final." (*Pereira* v. *Pereira* (1909) 156 Cal. 1, 10 [103 P. 488, 134 Am. St.Rep. 107, 23 L.R.A. N.S. 880].) In the instant situation the death of one of the spouses occurred in the interval between the rendition of the interlocutory decree and the enforcement of the property rights adjudicated in that decree; the death intervened before the court had allocated the community property of the parties.

Although the death of one of the spouses in such a case abates the divorce action, the abatement relates to the status of the parties and not to the property rights theretofore adjudicated. The death destroys the cause of action for the dissolution of the marriage; it does not liquidate the property rights which crystallized in the interlocutory decree.

*Klebora* v. *Klebora* (1931) 118 Cal.App. 613 [5 P.2d 965], illustrates the rule. There the court granted the husband an interlocutory decree of divorce and awarded him all of the community property. Prior to entrance of the final decree the husband died. In a subsequent suit the wife sought to upset the disposition of the parties' property in the interlocutory decree. The wife contended that "the death of one of the spouses before the year has run is productive of the same legal consequences *as to property rights* settled by an interlocutory decree, as those produced with respect to the *marital status*; in other words, that death automatically vacates the adjudication and sets the question of property rights at large." (*Id.* at p. 619.) In rejecting this analysis, the court said, " 'when the interlocutory decree deals with the status of the parties and also with the property rights of the parties, the case is quite different and the interlocutory decree . . . becomes a conclusive decree as to their property rights.' " (*Id.* at p. 618.)

Similarly, in *Darter* v. *Magnussen* (1959) 172 Cal.App.2d 714, 718 [342 P.2d 528], the husband, after his wife's death, undertook to modify the provision in the interlocutory decree

awarding a sizable portion of the community property to the wife. The court held that ''when the interlocutory decree becomes final [by lapse of time for an appeal or by death of one spouse] it is a conclusive adjudication and is res judicata with respect to awards of community property.'' In the interlocutory decree allocating the community property in *Darter* the court reserved jurisdiction to render orders respecting the sale of one piece of such property. Holding that, despite the wife's death, the divorce court could exercise such reserved jurisdiction and accomplish the sale, the District Court of Appeal likewise ruled that, since the judgment had become final, the court could not modify the decree ''to make any *further* determination of property rights, alimony, costs or attorney's fees.'' (P. 718.) The appellate court thus restricted the divorce court from making any *different* determination of the property rights by modifying the decree, saying, ''the death of a party does not affect the court's power to take such action as may still have to be taken to enforce the property rights adjudicated by the interlocutory decree.'' (*Ibid.*) (Accord *Gould* v. *Superior Court* (1920) 47 Cal.App. 197, 201, 203-204 [191 P. 56] ; *Abbott* v. *Superior Court* (1924) 69 Cal. App. 660, 666-667 [232 P. 154] ; see *Leupe* v. *Leupe* (1942) 21 Cal.2d 145, 148 [130 P.2d 697] ; *Hamilton* v. *Hamilton* (1948) 83 Cal.App.2d 771, 774 [189 P.2d 722] ; *Wilson* v. *Wilson* (1946) 76 Cal.App.2d 119, 129-133 [172 P.2d 568] ; 4 Witkin, Summary of Cal. Law (1960) 2774.)

Finally, in *Newhall* v. *Melone* (1962) 199 Cal.App.2d 121 [18 Cal.Rptr. 476, 19 Cal.Rptr. 28], the divorce court entered an order erroneously apportioning an award of attorney's fees to plaintiff's counsel. Prior to a hearing to reapportion the fees, defendant died. The court rejected the contention of defendant's representatives that defendant's death abated the proceeding and precluded the court from fixing the amount of the fees. The court aptly stated that ''. . . the death of one of the parties does not prevent the courts from taking action to enforce the rights adjudicated prior to the death of one of the parties.'' (*Id.* at p. 124.) Even though the fee had not yet been fixed, the court said that the right to the award had been established; any determination of the amount of such an award was an ''allocation'' of it and hence an enforcement of a property right.

In the instant case the interlocutory decree created in Mrs. McClenny a valuable property right which her death cannot destroy. The court granted Mrs. McClenny an interlocutory

decree of divorce upon the ground of extreme cruelty; such a decree necessarily constitutes an adjudication that in the absence of unusual circumstances Mrs. McClenny is entitled to more than one-half of the community property. (Civ. Code, § 146; *Eslinger* v. *Eslinger* (1873) 47 Cal. 62, 64; *Gaeta* v. *Gaeta* (1951) 102 Cal.App.2d 87 [226 P.2d 619]; *Shapiro* v. *Shapiro* (1932) 127 Cal.App. 20, 27 [14 P.2d 1058]; see *Tipton* v. *Tipton* (1930) 209 Cal. 443-444 [288 P. 65]; *Meyer* v. *Meyer* (1921) 184 Cal. 687, 689 [195 P. 387]; 4 Witkin, Summary of Cal. Law (1960) 2767, 2770). The decree thus created in Mrs. McClenny, and ultimately in her estate, a property right to a share of the community property in excess of the one-half portion to which the estate would have been entitled if the court had failed to grant Mrs. McClenny a divorce upon the ground of extreme cruelty.

The Superior Court of Los Angeles County therefore retains jurisdiction "to take such action as may still have to be taken to enforce the property rights adjudicated by the interlocutory decree." (*Darter* v. *Magnussen, supra,* 172 Cal. App.2d 714, 718.) Such jurisdiction finds further support in Civil Code, section 132 to the effect that ". . . The death of either party after the entry of the interlocutory judgment does not impair the power of the court to enter final judgment. . . ." In order to enforce the property rights adjudicated by the interlocutory decree, the superior court must first try title to the receivership property and then exercise its discretionary power to determine that portion in excess of one-half of the community property to which Mrs. McClenny's estate is entitled by virtue of the interlocutory decree.

Thus we hold that the intervention of death is not fatal to the right of the wronged spouse to the greater share of the community property. That the divorce court has not yet determined the exact allocation of such property does not nullify the innocent spouse's right, inherent in the decree of divorce for extreme cruelty, to more than one-half of that property. The court retains jurisdiction to effectuate its prior adjudication.

The decisions and propositions urged by petitioner do not affect that result. As we shall explain, our ruling does not, as petitioner argues, frustrate a fair determination of the issue of the division of the property or involve an overreaching of the court's jurisdiction.

Petitioner relies upon cases in which no issue developed as to disposition of the community property. Thus in *Gloyd* v.

*Superior Court* (1919) 44 Cal.App. 39 [185 P. 995], neither the pleadings nor the interlocutory decree presented an issue as to community property. The court denied the petition of the representative of the decedent spouse requesting a final decree of divorce; the court held only that it could enter no such decree since death had already dissolved the marital status. Similarly, *Estate of Seiler* (1912) 164 Cal. 181 [128 P. 334, Ann.Cas. 1914B 1093], presented only the question whether the husband could appropriately administer the estate of his wife, who had died during the interlocutory period; the case raised no issue as to the division of community property. Likewise, neither *Kirschner* v. *Dietrich* (1895) 110 Cal. 502 [42 P. 1064], nor *Begbie* v. *Begbie* (1900) 128 Cal. 154 [60 P. 667], involved any adjudication of property rights in the interlocutory decree.

*Bevelle* v. *Bank of America* (1947) 80 Cal.App.2d 333 [188 P.2d 730], cited by petitioner, turned upon the question whether a stipulation at the hearing on the order to show cause that attorney's fees and costs be set at time of trial survived defendant's death which occurred before the conclusion of the trial. The court held that it did not; that the court could not ''proceed with the action or . . . . make any further determination of property rights, alimony, costs or attorney's fees.'' (P. 334.) In that case the court had not, of course, rendered any decree, either interlocutory or final.

The instant determination of this matter does not founder upon petitioner's contention that the death of the spouse prevents a fair hearing upon the disposition of the property because, now, the court cannot adequately analyze the entire personal and economic history of the parties. Such disability, whatever its possible effect, lies in every hearing involving rights of a deceased party; yet the Legislature does not deem it of sufficient substance to destroy property rights. (See Prob. Code, § 573.) The intangible disadvantage of the loss of the decedent's testimony cannot outweigh the inequity of entombing the property righvs of the wronged spouse because of the fortuity of her death.

Nor, finally, can we accept petitioner's contention that the divorce court lacks jurisdiction to determine the property rights of the parties because the ''proper venue for quiet title actions is the county wherein the real property is located.'' If we were to uphold this contention, separate actions in Kern and Tulare Counties would be necessary to establish the titles to the involved real property and a further

action in Los Angeles County would be required to adjudicate the title to the personal property. This divorce action is not an in rem action to quiet title against the world; it is a disposition of property as between the spouses incident to the dissolution of the marital relation. As this court held in a divorce proceeding in *Huber* v. *Huber* (1946) 27 Cal.2d 784, 793 [167 P.2d 708], ". . . when the issue has been made the court may determine whether the property is separate or community and quiet title in the rightful owner."

If we were to assign to different courts the determination of the property rights of the spouses we would invite not only the certainty of a multiplicity of actions but the possibility of conflicting results. One court could conclude that the wife or the husband was entitled to a proportion of the involved assets different from that fixed by the other court; the result would be a piecemeal and disparate ruling on a basically single issue. Hence the court in *Barker* v. *Barker* (1956) 139 Cal. App.2d 206 [293 P.2d 85], explains that when the parties in a divorce action tender the issue of the disposition of the property, "they present to the court a cause of action to quiet title." (P. 211.) ██ "A court of equity will, when its powers are invoked, dispose of all issues with respect to the property as to which they are invoked, and make such orders as are necessary to make its decree effective." (*Ibid.*) (See also *Elms* v. *Elms* (1935) 4 Cal.2d 681, 684 [52 P.2d 223, 102 A.L.R. 811].)

Having stated our position on the principal issue and having set out our answers to petitioner's objections to that holding, we turn to the secondary matter of the receivership. ██ Petitioner asks that we terminate the receivership and turn over to him, prior to determination of the rights of the parties, the family assets held by the receiver.[3] To do so, we believe, would be to expose the assets to formidable dangers.

The court had both authority and reason to appoint the receiver; both subsist to the present day. Since the trial court may appoint a receiver after judgment (Civ. Code, § 140; Code Civ. Proc., § 564, subds. 3 and 4; see *Blodgett* v. *Haddock* (1949) 95 Cal.App.2d 17 [212 P.2d 26]), the court may, in a proper case, continue the receivership until the rendition

---

[3]Petitioner alleges that since the appointment of the receiver he has been unable to operate his business, his home is in foreclosure, and he generally faces "complete economic ruin." But as both the trust company and the receiver point out, petitioner's continuous efforts to thwart the receivership have contributed to whatever financial difficulties he now suffers.

of judgment. The original receivership order resulted from the trial court's belief that petitioner was unfit to manage the property. The order of August 2, 1962, expanding the original order, rested upon Code of Civil Procedure, section 564, subdivision 1, which provides for the appointment of a receiver upon a showing that the property "is in danger of being lost, removed, or materially injured." The basis for the court's determination of petitioner's unfitness has not been shaken; indeed, petitioner's subsequent misconduct in interfering with the management of the receivership and in apparently wilfully refusing to comply with the orders of the trial court[4] confirm the court's reasoning. To turn over the estate's share of the property to defendant would be to risk substantial loss to the three minor children, the beneficiaries under Mrs. McClenny's will.

In sum we can neither terminate the receivership nor hold that the wife's death deprived the court of jurisdiction to effectuate its adjudication of the property rights. The atomization of this action into proceedings in Kern, Tulare, and Los Angeles Counties could induce divergent rulings in different courts, would necessarily multiply expenses of litigation and might well deplete the involved assets to such an extent that the parties would ultimately receive nothing. The disaster which must attend such proliferation of litigation can be avoided by the resolution of the issues in one jurisdiction: the trial court. We need cut no Gordian knot to achieve this simple result; the cases and common sense support and, indeed, compel it. To the benefit of all concerned this protracted law suit may thereby be swiftly adjudicated.

The alternative writ is discharged and the petition for writs of mandate and prohibition is denied.

Traynor, C. J., Peters, J., Peek, J., and Mosk, J., concurred.

McCOMB, J.—I dissent. I would issue a peremptory writ of mandate and prohibition in accordance with the views expressed by Mr. Justice Kingsley in the opinion prepared by

---

[4]Defendant obtained in his voluntary bankruptcy proceedings temporary restraining orders restricting the powers of the receiver. Defendant is now appealing from the dismissal of the bankruptcy proceeding. The trial court has issued two separate orders to show cause *re* contempt against defendant. (See *McClenny* v. *Superior Court* (1964) 60 Cal.2d 677 [36 Cal.Rptr. 459, 388 P.2d 691].) The contempt proceedings are now pending before the trial court.

him for the District Court of Appeal in *McClenny* v. *Superior Court* (Cal.App.) 38 Cal.Rptr. 384.

Schauer, J., *concurred.

Petitioner's application for a rehearing was denied January 6, 1965. Burke, J., did not participate therein. McComb, J., and Schauer, J.,* were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.