[Civ. No. 7966. First Appellate District, Division One.—November 27, 1931.]

VERA KLEBORA, Appellant, v. CHARLES J. KLEBORA et al., Respondents.

Anthony S. Devoto and Devoto & Richardson for Appellant.

Thomas W. Forsyth for Respondents.

GOODELL, J., *pro tem.*—The appellant sued to quiet title to an undivided half interest in a piece of improved real estate in San Francisco. The respondent Charles J. Klebora answered asserting his ownership of an undivided three-quarters of the whole, and the respondent Martha Baugh answered claiming an undivided quarter of the whole. Judgment went for said respondents decreeing their interest to be vested in the proportions they claimed, and consequently that the appellant had no interest. From that judgment this appeal is taken.

The present litigation is the outgrowth of a contested divorce case brought by the appellant Vera Klebora against her husband Joseph Klebora, wherein the husband prevailed on his cross-complaint. The interlocutory decree therein awarded the property here involved to the husband, the court characterizing it as community property. There was no appeal from the interlocutory decree and the husband died within six months after its entry. About six months after his death, the appellant brought this suit to quiet her title against Charles J. Klebora and Martha Baugh who are children of her deceased husband by a former marriage, to whom conveyances of the property had been made by their father, after his separation from appellant. The present action attacks the adjudication of property rights which was made in the interlocutory decree. In the present case the trial court found, contrary to the findings in the divorce case, that the proprety was *not* community property.

The land in question was acquired many years before the death of Joseph Klebora's first wife, who was the mother of the two respondents, and the house upon it was built by the labor of Joseph Klebora and his son, the respondent. The earnings as well as the labor of the son contributed largely to the building of the house, which became the family home. After the mother's death, the

children continued to live there with their father. In 1924, the appellant came to San Francisco with a letter of introduction from a relative of Joseph Klebora in New York, immediately took up her residence in the Klebora home and, on August 30, 1924, within six weeks after her arrival, married Joseph. The record shows that during these six weeks she continually importuned him to marry her. The newly married couple and Charles and Martha continued to live in the home. In about two years it seems to have become desirable to quiet title against the first wife's estate, and thereupon Joseph and his wife Vera, as plaintiffs, sued Charles and Martha, and Charles as administrator of his mother's estate. All defendants suffered default, and in December, 1926, a decree was entered adjudging that Joseph and Vera were the owners of the property in joint tenancy, and that neither of the children by the first marriage, nor the first wife's estate, had any interest in it. In the following May, after domestic differences had arisen between the spouses, they separated. On July 14th following, Joseph made a deed of gift of a half interest in the property to his said children, which deed was recorded two days later. On the 27th of the same month Vera filed suit against Joseph for divorce on the ground of extreme cruelty. Joseph filed an answer and cross-complaint on the two grounds which, under section 146 of the Civil Code, warrant an award of more than half the community property, and in October the case was tried. Considerable time was permitted to elapse between the taking of the testimony and the findings for the purpose of having the property rights settled. On December 12, 1927, findings and an interlocutory decree were signed in favor of the husband on both grounds, and awarding him the property in suit as ''community property'', but requiring him to pay to the appellant $250 for herself and $65 for her counsel fee. Two days later, Joseph made another gift deed of the property, this time of the whole thereof and to the son alone. The appellant moved for a new trial of the divorce case, which was denied on January 23, 1928, and on February 2, 1928, the $315 awarded her was paid and a satisfaction filed. On June 4, 1928, Joseph Klebora died.

The appellant's first point is that the property was not community property at the time of the divorce case because

the deed of June 14, 1927, whereby Joseph conveyed a half interest to his two children, destroyed the joint tenancy of Joseph and Vera (*Green* v. *Skinner,* 185 Cal. 435 [197 Pac. 60]), and left Vera, Charles and Martha tenants in common, with an undivided one-half vested in Vera of which, it is claimed, she has never been divested; that this continued up to the time of the interlocutory decree, and that the court in the divorce case had no jurisdiction to award as community property that which was not. The trial court in the instant case found that the property in question "was not the community property of said marriage nor had Joseph Klebora on said 27th day of July, 1927, or at the time of the . . . interlocutory decree . . . any right, title or interest therein". But it also found that the subject matter hereof was "fully and finally adjudicated" in the divorce action.

The question is, conceding the judgment in the divorce case to have been erroneous in awarding this property, was such judgment, nevertheless, final and conclusive? The appellant's time to appeal from that judgment expired on March 25, 1928, at which time her husband was alive. The time to attack such decree under section 473 of the Code of Civil Procedure, however, would not expire until six months after its entry (*Bancroft* v. *Bancroft,* 178 Cal. 367 [173 Pac. 582]), which in this case was June 12, 1928, or eight days after the husband died.

The appellant claims (1) that Joseph's death dissolved the marriage and left the appellant his widow with all a widow's rights; (2) that the interlocutory decree would have become final on June 12th "had Joseph Klebora not died on June 4, 1928" and that no title vested in him under that decree since it lacked eight days of becoming final; (3) that "title would have vested in Joseph Klebora only upon the entry of the final decree and *not before*"; (4) that "the property rights of the parties, until the entry of the final decree, in the absence of a property settlement between them, remained as they were before the entry of the interlocutory decree"; and (5) that Joseph's death abated the divorce action and put an end to all further legal proceedings and that "the settlement of property rights, being but an incident of the interlocutory decree also abated".

■ It is settled in this state that when an interlocutory decree deals solely with the marital status of the parties *and is silent as to their property rights,* the death of one of the spouses before the time for a final decree renders the interlocutory decree *functus officio.* (*Abbott* v. *Superior Court,* 69 Cal. App. 660, 666 [232 Pac. 154] ; *Gloyd* v. *Superior Court,* 44 Cal. App. 39 [185 Pac. 995] and cases therein cited.) The death dissolves the marriage. (*Estate of Dargie,* 162 Cal. 51 [121 Pac. 320].) But "when the interlocutory decree deals with the status of the parties and also with the property rights of the parties, the case is quite different and the interlocutory decree, if not vacated in the mode prescribed by law, becomes a conclusive decree as to their property rights". (*Abbott* v. *Superior Court, supra,* citing *Gould* v. *Superior Court,* 47 Cal. App. 197 [191 Pac. 56].) In *Huncke* v. *Huneke,* 12 Cal. App. 199, 203 [107 Pac. 131, 133], it is said: " . . . in the absence of an order continuing the hearing as to property rights involved, the opportune time for hearing and final determination of the rights of the parties as to the property is at the time and place of the trial of the principal issue involved in the divorce." In *Pereira* v. *Pereira,* 156 Cal. 1 [134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488, 492] (which the Huneke case follows), the purpose and effect of the 1903 amendment of section 132 of the Civil Code is discussed. It will be remembered that before that amendment there was but one judgment, which not only dissolved the marriage but adjudicated the property rights. "By thus making the right to a divorce ineffective for the period of one year," says Judge Shaw in that case, "it became impossible for the parties to contract a valid new marriage anywhere until at least a year after the trial of the action of divorce had taken place. *Except so far as was necessary to accomplish this object,* it was not the intent of the statute to change in any respect the practice and procedure in actions for divorce. We do not doubt that the court has the same power now that it has always had to try and determine the issues between the parties in a divorce action with respect to property and custody of children, *and that this may, and generally should, be done at the same time as the issues with respect to the cause for divorce are tried and determined."* (Italics ours.) Further it is said that the court may "postpone the trial and

decision of the property rights . . . to any reasonable time after the rendition of the judgment of divorce, whether interlocutory or final'', and indeed it is suggested that this is a commendable thing to do. Since the Pereira case the rule of the Gould and Abbott cases that ''the interlocutory decree of divorce becomes a conclusive decree as to the property rights of the parties if not vacated in the mode prescribed by law'' has been repeatedly ·recognized and followed. (*Bacigalupi* v. *Bacigalupi,* 72 Cal. App. 654, 658 [238 Pac. 93] , *Gillespie* v. *Andrews,* 78 Cal. App. 595, 598 [248 Pac. 715] , *In re O'Connell,* 80 Cal. App. 126, 128 [251 Pac. 661] , *Lopes* v. *Bruns,* 92 Cal. App. 691, 693 [268 Pac. 928], and *Greenwood* v. *Greenwood,* 101 Cal. App. 736, 740 [282 Pac. 433]. See, also, *Claudius* v. *Melvin,* 146 Cal. 257 [79 Pac. 897] ; *Suttman* v. *Superior Court,* 174 Cal. 243 [162 Pac. 1032].) ▉ We have already seen that the only ways to attack the decree are by appeal or under section 473 of the Code of Civil Procedure, and that neither method was followed. Therefore under the authorities the interlocutory decree, dealing as it did with property rights, became final as to those rights and the death of Joseph Klebora in no way affected it.

▉ The appellant's five contentions which have been enumerated are really reducible to this,—that the death of one of the spouses before the year has run is productive of the same legal consequences *as to property rights* settled by an interlocutory decree, as those produced with respect to the *marital status;* in other words, that death automatically vacates the adjudication and sets the question of property rights at large. Such contention finds no support in the authorities. The cases indeed are all the other way. It may be argued that the Gould case is distinguishable because there an agreement formed the basis for the decree. The appellant stresses the point that here there was no agreement; but that can make no difference for '' 'a judgment is a contract, in the highest sense of the term' ''. See *Gould* v. *Superior Court, supra,* and cases there cited. Two other cases applying the rule to divorce actions are *London G. & A. Co.* v. *Industrial Acc. Com.,* 181 Cal. 460, 467 [184 Pac. 864], and *Lopes* v. *Bruns, supra,* where it is said (p. 693) : ''The interlocutory decree became a contract between the parties in the divorce action.'' Death would not

have set at naught an agreement between the spouses. If, then, they could have settled their property rights with finality by contract, it is difficult to perceive, in view of the rule just discussed, how a judgment which does the same thing possesses no such finality and is of lesser dignity.

There are *dicta* in some of the California cases which seem to lend support to the appellant's claim that "the title would have vested in Joseph Klebora only upon the entry of the final decree". *Brown* v. *Brown,* 170 Cal. 1 [147 Pac. 1168, 1171], is cited, but all it holds is that in the absence of pleading and proof of community property or an adjudication respecting it in an interlocutory decree, property acquired by a husband (otherwise than by gift, devise or descent) between the interlocutory and final decrees is community property and that upon the final decree the spouses become tenants in common. When that case was commenced there was no community property, and the complaint so alleged. The interlocutory decree therefore made no adjudication respecting property rights, for there was no such question before the court. The opinion is careful to say: "The record shows that no adjudication was made in that case barring the rights of the wife in the property here in controversy." *Remley* v. *Remley,* 49 Cal. App. 489 [193 Pac. 604, 605], *Strupelle* v. *Strupelle,* 59 Cal. App. 526 [211 Pac. 248], and *Radich* v. *Radich,* 64 Cal. App. 605 [222 Pac. 182], are cited by appellant and are grouped because of their similarity. They simply hold that in the interlocutory decree the court should not dispose of homestead rights, but that such disposition should be left to the final decree. Indeed, it might be said parenthetically, the Pereira case, *supra,* itself commends this practice with respect to *all* property rights, but it does not hold, nor do these three cases, that if an adjudication is made in the interlocutory decree and no appeal is taken, or proceedings had under section 473 of the Code of Civil Procedure, such decree does not become final as to the property questions. Indeed the Remley case, which the other two follow, expressly recognizes this to be the rule for it cites the Bancroft case, *supra,* as holding that after the time has expired "the trial court is without jurisdiction to alter or set aside its interlocutory judgment." All three appeals were from interlocutory decrees and all three are distinguished **in**

*Abbott* v. *Superior Court, supra,* where, among other things, it is said: "But in the instant case there was no appeal from the interlocutory decree and it has become conclusive on the parties at this time," which may be said with equal force of the case at bar. The Remley case is cited by this court in *People* v. *Baender,* 68 Cal. App. 49, 60 [228 Pac. 536], as authority for the proposition that "said [interlocutory] decree would have become final if not reversed or modified on appeal". *Roberts* v. *Wehmeyer,* 191 Cal. 601, is cited by appellant where at page 615 [218 Pac. 22], is found a statement which shows on its face that it is only a *dictum. Estate of Boeson,* 201 Cal. 36 [255 Pac. 800], likewise is cited, but it is not in point.

The outstanding finding in the case at bar in favor of the appellant was that at the time of the divorce trial and decree, the property in question was not community property, which was tantamount to holding that the divorce judgment was erroneous so far as property matters went. But the court also found "that the subject matter involved in this action was fully and finally adjudicated" in the divorce case,—an application of the rule illustrated by such cases as *Lamb* v. *Wahlenmaier,* 144 Cal. 91 [103 Am. St. Rep. 66, 77 Pac. 765], and *Akley* v. *Bassett,* 68 Cal. App. 270, 289 [228 Pac. 1057]. In *Ernsting* v. *United Stages, Inc.,* 206 Cal. 733, 736 [276 Pac. 103, 105], it is said: " . . . if dissatisfied with the pronouncements of the court in said first action, it was their [appellant's] duty to see that a review of that judgment was had upon appeal. Failing to do this, the judgment, even were it erroneous, is nevertheless final and effective." There can be no question that this case is within that rule and that that determination by the trial court was correct.

We are satisfied that the interlocutory judgment was final and conclusive for another reason. By the decree, the husband was required to pay the appellant $250 for herself and $65 for her counsel. This $315 was paid, and a satisfaction given after the appellant's motion for a new trial had been denied. The rule is well settled that "the judgment, being satisfied, 'has passed beyond review', for the satisfaction thereof 'is the last act and end of the proceeding'. (*Morton* v. *Superior Court,* 65 Cal. 496 [4 Pac. 489].)" (*People* v. *Burns,* 78 Cal. 645, 646 [21 Pac.

540]; *In re Baby*, 87 Cal. 200 [22 Am. St. Rep. 239, 25 Pac. 405].) In *Estate of Shaver*, 131 Cal. 219 [63 Pac. 340], it is said: "The right to accept the fruits of a judgment, and the right of appeal therefrom are not concurrent. On the contrary, they are totally inconsistent. An election to take one of these courses is, therefore, a renunciation of the other." The case of *Storke* v. *Storke*, 132 Cal. 349 [64 Pac. 578], is in point. There, as here, the defendant lost, but the court nevertheless awarded her a small money judgment ($250 for alimony and $200 for attorney's fees and costs), which was paid and accepted. Thereafter the defendant moved for a new trial but the proceedings therefor were dismissed, the court saying: "Defendant accepted the part of the judgment that was beneficial to her. It was a final judgment, and by its terms gave her $450. This sum was based upon the findings, and was the result of the litigation. Defendant took the $450, and now seeks to attack the judgment through which she received it. This she cannot do. Having taken the benefit, she must bear the burden. The amount of this judgment was not large, but the principle is the same. . . . The principle is well settled that a party accepting and receiving the portion of the judgment beneficial to him cannot appeal from it." (See, also, *Union Lithograph Co.* v. *Bacon*, 179 Cal. 53 [175 Pac. 464].)

To sum up: Under the authorities first discussed, the interlocutory decree, having spoken with respect to property rights, was unaffected by Joseph Klebora's death, in the absence of appeal or an attack upon it under section 473. Secondly, right or wrong, such decree under the authorities is *res judicata*. And, thirdly, the acceptance by the appellant of the $315 in any event estops her from attacking the interlocutory judgment.

The appellant, however, makes an altogether separate and independent attack upon the divorce adjudication. Some six months after the respondents had answered, the appellant filed an amendment to her complaint, adding two new counts for fraud and mistake and praying for the cancellation of the interlocutory judgment. At the outset it should be said that, except for the finding that the property was not of community character, and several minor findings in appellant's favor, the findings on the issues raised by this amendment and the answer thereto were all against the ap-

pellant and she attacks these adverse findings as being unsupported by the evidence.

The court found, in appellant's favor, that Vera and Joseph had been joint tenants of the property; that the first deed to the respondents was made on July 14th and recorded two days later; that the second deed to the respondent Charles J. Klebora was made on December 14th and recorded on the same day, and that at the time of the divorce trial Vera, Charles and Martha were tenants in common.

The record herein contains the pleadings in the divorce case. The divorce complaint alleged that "there is community property belonging to said plaintiff and said defendant consisting of" the property in question, which the answer did not deny. The cross-complaint therein alleged "that there is certain community property, belonging to said parties hereto, consisting of *an interest" in the same property*. (Italics ours.) In the present case, said amendment alleges that there was, in the divorce case, a mutual misapprehension of the law with respect to community property, that because of such misapprehension and the belief that the property was community, appellant alleged what has been quoted, and Joseph likewise alleged in his cross-complaint what has been quoted; that because of this there was no adversary trial or decision, no real contest and no fair submission of the question whether the property was the separate property of Vera, the separate property of Joseph, the community property of both, or whether Joseph had any right at all therein. The findings are against the appellant on each of these issues. Indeed they not only negative these claims, but they go further and find that the interlocutory decree was based solely upon the erroneous pleadings and that the error was caused by appellant alleging "that which was not true and which she knew or should have known to be untrue" and further, that her allegation respecting community property was made "in a fraudulent effort on her part to obtain the whole of said real property".

It must be remembered, in discussing appellant's attack, that the judgment-roll in the divorce case was before the court in the instant case, and the findings in the divorce case find as true certain allegations in Joseph Klebora's answer and cross-complaint. Among other allegations so found to be true, are those that, while appellant and

Joseph were living together she "designedly sought to obtain the title and control of the property"; that she took community funds from the business and from the bank account; that "she also took from said bank certain papers, deeds and legal documents". These facts are sufficient to show a familiarity with matters of property and title. There was documentary evidence in the form of a memorandum, sufficient in itself to show that she knew, when the divorce complaint was prepared, that her husband had already, on July 14th, conveyed to his children. The appellant admitted taking certain legal papers from a joint tenancy safe deposit box, but she claimed that they were her own. There was impeaching character testimony introduced against her under section 2051 of the Code of Civil Procedure by three witnesses. Two of these witnesses, a husband and wife, testified without contradiction that on an occasion when appellant and Joseph had been quarreling and they were sent for by appellant, the suggestion had been made by them that Joseph and Vera "go 50-50" but that the appellant had said: "No, *the house belongs to me,* and the machine too." (Italics ours.)

The findings herein show that the appellant was at all times, before, during and since the divorce case, represented by able counsel and that is not disputed. They show, moreover, that the deed of July 14th was not withheld or concealed, but promptly recorded two days later; that Joseph Klebora did not know his wife's address after July 14th; that the second deed, which by the way was given *after* the interlocutory decree, was recorded on the same day. The record shows that the divorce trial was on October 19, 1927, and the findings were not signed until December 12th following, and in the interim counsel on both sides were trying to settle the property question on the court's suggestion. These findings are sufficient to negative any suggestion that there was hot haste or anything but a cool and deliberate consideration of the matter by counsel. There is an allegation that Joseph Klebora persistently represented to appellant *after July 14th* that the property belonged only to them. This was found to be not true and it would seem without much difficulty, for they had separated on May 4th. It was found that appellant had appropriated approximately $4,500 from community funds.

The court found that there was no extrinsic fraud; it found also that appellant knew ever since the first quiet title suit in 1926 that the property was held in joint tenancy and that any statement she made to the contrary was fraudulent. It found that she had been guilty of negligence and carelessness and laches in the conduct of the litigation. The appellant's allegations respecting relations of confidence and trust and her reliance upon her husband are all negatived in the findings, and there is ample support in the evidence for them.

We are satisfied that the judgment should be affirmed and it is so ordered.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 26, 1931, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 25, 1932.