[Civ. No. 21572.    Second Dist., Div. One.    Nov. 28, 1956.]

ROBERT M. NEWELL, Respondent, v. WILLIAM H.
BRAWNER, Appellant.

Glenn A. Lane, Ernest W. Pitney and Paul Barksdale d'Orr
for Appellant.

Ernest J. Zack for Respondent.

FOURT, J.—This is an appeal from a judgment in favor of the plaintiff wherein the title to certain real property in the county of Los Angeles was quieted in the plaintiff.

A fair résumé of the facts of the case is hereinafter set forth. The respondent herein was married on or about November 1, 1942, to Gertrude Newell, now known as Gertrude Ralphs, the daughter of the appellant. The property which is the subject of this action was the place formerly occupied by Mr. and Mrs. Newell as a home. Each of the parties to this action is a practicing attorney at law. About May 20, 1948, respondent and his then wife acquired a parcel of real property which was then vacant. The deed recited that they were husband and wife and they took title to the said property as joint tenants. In about 1950, Mr. and Mrs. Newell caused a house to be constructed upon the lot. They had approximately $9,000 in community funds. A construction loan was secured for the major part of the balance of the cost of the building. The mother-in-law, Mrs. Brawner, assisted in providing funds for the completion of the house.

About June 30, 1953, the respondent and his wife separated. She left the state of California with their three children and, among other places, went to the state of Idaho (where a final decree of divorce can be secured upon six weeks residence). The appellant herein conferred with an attorney in Idaho who subsequently represented his daughter in the Idaho divorce proceedings.

On August 17, 1953, the respondent filed a divorce action in Pasadena, Case Number Pasadena D-11260. In that complaint he alleged that, ''The community property of the parties consists of the following: (1) The house and lot situated at 1300 Virginia Road, San Marino, California. (2) The furniture and furnishings in the family home.'' The prayer of that complaint prayed for judgment against the defendant, ''that the community property of the parties be distributed pursuant to law, and in such manner as the court deems proper.'' The then Mrs. Newell was served in the state of Idaho with a copy of the complaint and a copy of the summons on August 24, 1953. On August 22, 1953, the then Mrs. Newell filed an action in divorce in Gooding County, Idaho, the complaint therein being verified on August 15, 1953, wherein, among other things, she alleged that she was a resident of the state of Idaho and that, ''there is . . . community property comprising . . . an equity in the house.'' This apparently referred to the house in Los Angeles county, the real property involved in this case.

On August 28, 1953, the appellant recorded in the office of the county recorder of Los Angeles county a grant deed executed by his daughter, the respondent's wife, wherein she purported to convey her interest in the property to her father, the appellant. The deed set forth on its face that it was made on the 14th day of August, 1953.

The then Mrs. Newell appeared in the divorce action in California on September 25, 1953, but did not answer the complaint, and on that date findings of fact and conclusions of law were made and filed, wherein the court, upon good and sufficient evidence, found that the plaintiff was a resident of Los Angeles county and that the defendant in that action had been for six years prior to the filing of the case, and was on the date of the commencement of such action, a resident of the county of Los Angeles, state of California, and further, that the parties had accumulated certain community property consisting of the house and lot in question and other property. An interlocutory decree of divorce was granted the respondent herein on September 25, 1953, and said decree was entered on September 29, 1953. The decree provided, among other things, that the property described as ''[t]he house and lot situated at 1300 Virginia Road, in the City of San Marino, County of Los Angeles, State of California,'' and then more particularly described, was awarded to the respondent herein as his sole and separate property.

No appeal was taken from that interlocutory judgment and no proceedings were had under section 473 of the Code of Civil Procedure.

The appellant never informed the respondent of the existence of the deed from his daughter to him, he paid no taxes on the property and the records of the company which had the loan against the property indicated that they had received no communication from the appellant as the new owner, or otherwise. The respondent had no actual knowledge of the existence of the deed until April, 1954, and shortly thereafter started this action to quiet title against the appellant. The appellant filed a cross-complaint to enforce a resulting trust in the real property and for an accounting and partition. The name of Ernest W. Pitney appeared in the cross-complaint as counsel for appellant. It further appears, from various documents, that appellant and Pitney are officed at the same address.

The appellant testified that the deed from his daughter, the

former Mrs. Newell, was prepared by the Idaho attorney who was representing the daughter in her Idaho divorce proceedings ,and that he, the appellant, had nothing to do with its preparation. It should perhaps be noted here that it was eight days after the supposed execution of the deed that the then Mrs. Newell brought her action for a divorce in Idaho, wherein she alleged that the property in question was the community property of herself and her husband. It should further be noted that the lawyer who supposedly prepared and acknowledged the deed as a notary public was the same person who prepared the divorce complaint for Mrs. Newell, and as a notary, took the verification of Mrs. Newell on the divorce complaint.

David Black, who qualified as an expert on questioned documents testified that he examined the deed and the cross-complaint of the appellant filed in this cause on May 21, 1954, that he made a study of the typewriting on the documents and that it was his opinion that the portion of the deed which contained the particular description of the property, namely, paragraphs two and three of the deed, and the words "William H. Brawner, 621 South Spring Street, Los Angeles 14, Calif.," on the reverse side of the deed were typed on the same individual typewriter as typed the typewriting in the cross-complaint in the present lawsuit. He further testified that the first part of the deed was typed on an Underwood typewriter, pica type, and the part containing the particular description in the deed in paragraphs two and three, and the cross-complaint were typed on an I.B.M. electric typewriter bearing pica type. The deed was a printed form titled at the top "613—WARRANTY DEED," and obviously was prepared for general usage in the state of Idaho, as the words "State of Idaho" were printed on the face of the document, and on the reverse side in the acknowledgment form the words "State of Idaho" are printed twice. In the preparation of the deed in the first instance the word "Idaho" was not crossed out on the face of the deed, so that it then read "all of the following described real estate, situated in the, County of Los Angeles, State of Idaho." This was later corrected in October of 1953.

The appellant contends that the judgment is unsupported by and contrary to the evidence. It is his theory that the funds which went into the purchase and improvement of the property were the separate property of his daughter, the respondent's wife, or joint tenancy property of the respondent

and his then wife. ▆ As heretofore set forth, the court in the California divorce proceeding found the property to be the community property of Mr. and Mrs. Newell and made a judgment accordingly. In our opinion that judgment was properly received in evidence in this case. There was further evidence in the case which, if believed, and the trial court did obviously believe such testimony, that the property was the community property of the respondent and his wife.

Furthermore, Mrs. Newell, in her Idaho divorce action alleged under oath that the property was community property. The respondent, in his divorce complaint, alleged that it was community property, and Mrs. Newell failed to answer such allegation. It was appropriately said in *Cairo* v. *Cairo,* 87 Cal.App.2d 558, at page 562 [197 P.2d 208] : ''Since the complaint alleged the real property to be community and there is no denial of that fact no additional proof of that fact is necessary. (Code Civ. Proc., § 462; *Beatty* v. *Pacific States S. & L. Co.,* 4 Cal.App.2d 692, 698 [41 P.2d 378] . . . .)'' And in *Christiana* v. *Rose,* 100 Cal.App.2d 46, at page 50 [222 P.2d 891], the court said: ''Under the decided cases, it is the law of this state, at least where a defendant is personally served in a divorce action and defaults, that, by such default, he admits all of the allegations of the complaint, and is estopped from thereafter challenging them.''

In *Brown* v. *Brown,* 170 Cal. 1, at page 5 [147 P. 1168], the court said : ''Where a defendant is served with a summons and complaint stating the facts upon which he is required to act, and he makes default, he is presumed to admit all the facts which are well pleaded in the complaint. The judgment which follows upon this sort of admission is, in contemplation of law, a complete adjudication of all the rights of the parties embraced in the prayer for relief and arising from the facts stated in the complaint, including the facts in his favor as well as those against him. The defendant here is presumed to have acceded to the proposition embraced in the complaint and to have consented that plaintiff should obtain the relief therein prayed for, upon the conditions and facts set forth in the complaint. The proceeding is equivalent to a statement by Brown to the plaintiff that he did not object to a divorce for the cause alleged, based upon the theory that there was no community property existing at the time the action was begun. When judgment is rendered upon such a complaint and default, it becomes, in effect, a contract

between the parties that the judgment shall be final with respect to everything properly embraced within the allegations of the complaint and in the prayer for relief. (Citing cases.)''

Appellant next contends that the trial court relied upon the default divorce decree and that it was error for the court so to do. Appellant sets forth that the judgment in divorce was not pleaded as res judicata, that he was not a party to the divorce action and therefore his title was not adjudicated in that action.

Code of Civil Procedure, section 1908, subdivision 2, provides as follows:

''2. In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and *their successors in interest by title subsequent to the commencement of the action* or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding.'' (Emphasis added.)

The court found in the instant action that: ''Gertrude B. Newell executed a deed to the above described real property to William H. Brawner, said deed being dated August 14, 1953, but in truth and in fact said deed was executed and delivered about August 26, 1953, after Gertrude B. Newell and William H. Brawner each had actual notice of the pendency of the hereinabove mentioned divorce action, being Los Angeles Superior Court case Number Pasadena D.-11260, and after each had actual notice that Robert M. Newell claimed the above described real property as community property in said divorce action.''

There was ample evidence to sustain the finding made by the court. The court could easily have inferred that it was Mrs. Newell's original intent to litigate all of the matters between the parties in her Idaho action, including the question of their community property, for she set forth under oath on August 15, 1953, that the property was community property and she prayed that all of the same be decreed to her as her sole and separate property.

The respondent filed his divorce action in California on August 17, 1953, and served the wife with a copy of the complaint and summons on August 24, 1953. He alleged the matters heretofore considered. The appellant in this case and his daughter, Mrs. Newell, could well have been in a

quandary as to what to do about the property. Appellant knew that to litigate in California might result in the very thing Mr. Newell had prayed for in his complaint. Respondent has suggested that on or about August 25th or 26th, 1953, immediately following Mrs. Newell's being served with a copy of the California divorce proceedings, that Eberle, the Idaho lawyer for Mrs. Newell, prepared so much of the deed in question as he was able to do with the information he had at hand, namely, the name of the grantor and grantee and the general address of the former home of Mr. and Mrs. Newell; that he then mailed such document to appellant herein, who completed it by typing in the legal description, using the same typewriter in his office that he used to type his cross-complaint in this action; that by arrangement between appellant and the Idaho attorney the deed was antedated to August 14th, and the acknowledgment taken accordingly. Respondents points out that any such conspiracy was necessarily frustrated from the beginning because Mrs. Newell's Idaho divorce action was on file August 22, 1953.

Appellant, in attempting to explain the situation and in testifying after the questioned document expert had testified, stated that he might have possibly picked up a blank form of an Idaho deed when he was in Idaho with his daughter and had typed in the legal description and mailed the same back to her in Idaho for signature. Respondent, quite properly, put the query that if such be the case, why did appellant omit the first paragraph of the description which was written on a different typewriter (apparently in Idaho), or if he did omit the first paragraph, how was he able to tell in advance exactly the right amount of space to leave to the end that the second paragraph would appear to follow the first uninterruptedly? We have carefully examined the deed in question, and from a casual or ordinary inspection it appears to be an ordinary, usual deed on a printed form. However, upon a minute inspection, it is apparent that the testimony of the expert could well be and probably is correct. In any event, the trial court apparently considered that the expert was telling the truth, and that the testimony of the appellant was thoroughly impeached, and from the record we believe that the trial court had good cause therefor.

The facts herein are similar to those in *Karlein* v. *Karlein*, 122 Cal.App.2d 113 [264 P.2d 221], wherein Viola Karlein filed a complaint for divorce against her husband, in which she alleged that the family house on a certain lot owned by

them in joint tenancy was community property. A default judgment was entered on January 12, 1950, and subsequently set aside upon motion of the husband. While the divorce was still pending the husband quitclaimed his interest in the property to the appellant, Hilda Greis, his sister. The deed was recorded October 22, 1951. A second interlocutory decree of divorce, based upon the finding that the residential property was community property, awarded it to the wife. No appeal was taken. The wife sued to quiet title to the property. The court quoted section 1908, subdivision 2 of the Code of Civil Procedure and said (at page 114): ''This statute is applicable to the case at bar and is conclusive of the questions on appeal.'' It further said (at pages 114-115): ''The status of the title of the property was placed in issue by the complaint in the divorce action. The interlocutory decree adjudged the home place to be community property and awarded it to the wife. Since no appeal was taken from the decree, the award of the property to Viola is final. (Citing case.) The authorities relied on by appellant which hold that the disposition of property by interlocutory decree is not final (*Slavich* v. *Slavich*, 108 Cal.App.2d 451, 460 [239 P.2d 100] . . . , and *Wilson* v. *Wilson*, 76 Cal.App.2d 119, 129 [172 P.2d 568] . . .) are actions in which an appeal *was taken* from the interlocutory decree.'' (Also see *Spahn* v. *Spahn*, 70 Cal. App.2d 791 [162 P.2d 53].)

Furthermore, the determination of the interlocutory decree is res judicata. (*Klebora* v. *Klebora*, 118 Cal.App. 613 [5 P.2d 965].)

Appellant next contends, in effect, that the judgment in the California divorce action is void because the description of the real property is insufficient. In *Henderson* v. *Henderson*, 85 Cal.App.2d 476, at pages 479 and 480 [193 P.2d 135], the court said: ''The description of the real property in the complaint, 'equity in real . . . property, situated in Shasta County, California, and standing in the joint names of the plaintiff and defendant,' would be a sufficient description for a deed. (9 Cal.Jur. 306.) It complies with the requirements of section 455, Code of Civil Procedure in that it is described with such certainty as to enable an officer, upon execution, to identify it. So far as pleading is concerned the description is sufficiently certain to give the court jurisdiction over it. 'It is generally held that an insufficient description of real estate in a pleading does not subject the resulting judgment affecting the title to or an interest in such

property to collateral attack, even though the description may have been too general, or uncertain, and indeed, even though the petition may not have stated a sufficient cause of action to be good on demurrer.' (31 Am.Jur. 187; and *cf., Scarf* v. *Aldrich,* 97 Cal. 360, 368 [32 P. 324].)''

In this connection the appellant relies upon *Burtnett* v. *King,* 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333]. In *Christiana* v. *Rose, supra,* 100 Cal.App.2d 46, at page 52, there is an appropriate reference to the Burtnett case wherein it is said: ''Appellant places considerable reliance on *Burtnett* v. *King,* 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333]. . . . There the complaint in a divorce action had alleged that there was certain specified community property, but the prayer of the complaint asked for no relief in reference to such property. Defendant defaulted. The decree awarded the property to plaintiff. The Supreme Court properly reversed, holding that the trial court, in a default case, cannot award a plaintiff greater relief than that demanded in the complaint. (See Code Civ. Proc., § 580.)

''That case involved a different problem than that here involved. In the instant case, the court did not, as in the Burtnett case, give the plaintiff in the divorce action relief not prayed for. Here, the divorce decree gave the plaintiff relief that was in exact accord with the prayer of the complaint.''

In appellant's closing brief new matters are raised that are not set forth in the opening brief. Under rule 14, Rules on Appeal, appellate courts are not disposed to consider points raised for the first time in an appellant's closing brief, and it has been generally understood that it is not proper practice in the reply brief on appeal to raise a question for the first time. In spite of such failure to properly raise such matters in the first instance, we have deemed it proper to consider some of the contentions raised in the reply brief.

It is contended that at the time of the trial of this action the interlocutory decree of divorce of the respondent had become final in that the time for appeal and time for attack under Code of Civil Procedure, section 473, had elapsed, but that no decree of divorce *a vinculo* had been entered. (*A vinculo matrimonii* is defined in Bouvier's Law Dictionary [8th ed., p. 2] as ''A kind of divorce which is a dissolution of the marriage contract or relation.'', and in Black's Law Dictionary, 3d ed., ''Lat. from the bond of matrimony: A term descriptive of a kind of divorce, which effects a complete

dissolution of the marriage contract.'') In other words, it is contended that Newell did not have a title by virtue of the interlocutory decree of divorce which could be quieted; that all Newell got by the divorce decree was an adjudication that he would be entitled to have the whole interest in the property put over to him as community property in a final decree dissolving the marriage, and that all he could get was the provisional contingent, defeasible right to have the property vest in interest and enjoyment if, eventually, the bonds of matrimony should be severed.

Before the system of interlocutory decrees was established in this state, the property rights and the marriage relation were completely disposed by in a single judgment. (*Grannis* v. *Superior Court,* 146 Cal. 245 [79 P. 891, 106 Am.St.Rep. 23].) Some of the history and background of the legislation is set forth in *Pereira* v. *Pereira,* 156 Cal. 1, at pages 9 and 10 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880], where the court stated: ''From these provisions it is argued by the appellant that the court's power to make a disposition of the property rights of the parties exists only at the time when the divorce judgment becomes final and that any act attempted to be accomplished before that, in the way of a trial or interlocutory judgment declaring the property rights or the rights to the custody of children, is *coram non judice* and void.

''We do not think that the code provision requires such a narrow construction. When the history of legislation on the subject and the conditions existing at the time of the adoption of the amendment of 1903 are considered, the purpose, meaning, and effect of that amendment are not difficult to discover. While the law deems it necessary to provide that a divorce may be granted when conditions are such as to make the marriage relation intolerable, it is nevertheless true that the policy of the law does not favor the dissolution of marriages. It has been generally believed that many divorces were sought, not in good faith, but because a roving fancy had found another affinity more attractive, and that a dissolution was often desired solely for the purpose of forming a new marital connection. With the design of providing conditions under which it would be understood that ardent passions of this character must perforce have time to cool before a new marriage relation could be actually formed, the Legislature, in 1897, enacted a law in effect providing that no marriage should be entered into by any divorced person, until at least

one year had elapsed after the decree of divorce was rendered. (Stats. 1897, p. 34.) It had become customary to avoid the provisions of this act by the expedient of going to an adjacent state for the purpose of entering into a new marital relation. This court was compelled to hold that marriages contracted in another state were valid in this state, although they were entered into within less than a year after a divorce had been granted in this state to one of the parties. (*Estate of Wood,* 137 Cal. 129 [69 P. 900], . . .) The purpose of the amendment of 1903 was to carry into effect the object attempted to be attained by the statute of 1897. To do this the expedient was adopted of delaying the final judgment in divorce cases for the period of one year after it was judicially ascertained that a divorce should be granted. By thus making the right to a divorce ineffective for the period of one year, it became impossible for the parties to contract a valid new marriage anywhere until at least a year after the trial of the action of divorce had taken place. Except so far as was necessary to accomplish this object, it was not the intent of the statute to change in any respect the practice and procedure in actions for divorce. We do not doubt that the court has the same power now that it has always had to try and determine the issues between the parties in a divorce action with respect to property and custody of children, and that this may, and generally should, be done at the same time as the issues with respect to the cause for divorce are tried and determined.''

In many instances, the trial court has been directed to dispose of the property in the final decree as determined in the interlocutory decree. (*Gould* v. *Superior Court,* 47 Cal.App. 197 [191 P. 56] ; *Remley* v. *Remley,* 49 Cal.App. 489 [193 P. 604] ; *Strupelle* v. *Strupelle,* 59 Cal.App. 526 [211 P. 248] ; *Radich* v. *Radich,* 64 Cal.App. 605 [222 P. 182].)

In *Abbott* v. *Superior Court,* 69 Cal.App. 660, 664, 665, 666, 667 [232 P. 154], the court said: ''But when each and every period has expired within which an attack could have been made by motion or by appeal, then and in that event the so-called interlocutory decree, in so far as it adjudges the property rights of the parties, becomes a conclusive decree. (Citing cases.) In the latter case [*Huneke* v. *Huneke,* 12 Cal.App. 199 (107 P. 131)], at page 203, the court said: 'The primary contention of appellant is that, under the statutes of this state, the court had no jurisdiction to enter a judgment establishing the rights of the parties to the property involved until the

expiration of one year from the date of the interlocutory judgment decreeing the divorce, or until such time as the entry of a final judgment came on to be heard. This contention has been met and determined adversely to appellant by this court in *John* v. *Superior Court,* 5 Cal.App. [262] 264 [90 P. 53], and subsequently by the Supreme Court in *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488], in both of which cases it is determined that, in the absence of an order continuing the hearing as to the property rights involved, the opportune time for hearing and final determination of the rights of the parties as to the property is at the time and place of the trial of the principal issue involved in the divorce. . . . In so far, then, as the action involving the conflicting claims to real property is concerned, the judgment of the court thereon became final as to all parties six months after the entry thereof, in the absence of appeal.'

. . . . . . . . . . . . . .

"It is claimed that interlocutory decrees, no matter how worded, should be held as merely interlocutory as to property rights and not conclusive until adopted and inserted in a final decree. If so, it must follow that, in the vast majority of cases that have heretofore been decided, the property rights of those litigants have not been disposed of because the final decrees were silent on the subject and that such parties are tenants in common. (*Brown* v. *Brown, supra* [170 Cal. 1 (147 P. 1168)].) Every principle involved in the rule of *stare decisis* constrains us not to make such a ruling unless compelled to do so. (*Sacramento Bank* v. *Alcon,* 121 Cal. 379, 382 [53 P. 813].) For the reasons hereinabove stated we think the principle applied in the Gould case applies to this case and we are not disposed to depart therefrom."

In the case of *Leupe* v. *Leupe,* 21 Cal.2d 145, the court said, at pages 148 and 149 [130 P.2d 697] : "Even though a final decree is not entered, the interlocutory decree becomes a conclusive adjudication and is res judicata with respect to all issues determined. (Citing cases.)

"Language may be found in certain decisions which cannot be reconciled with the foregoing cases. In *Estate of Boeson,* 201 Cal. 36, 40 [255 P. 800], relied upon by respondent, it was said that the entry of an interlocutory decree does not sever the marital relation, and that any disposition of property made thereby becomes effective only upon entry of the final decree, until which time property rights remain as before the interlocutory decree. The court cited *Estate of Dargie,* 162 Cal.

51 [121 P. 320], and *Estate of Seiler,* 164 Cal. 181 [128 P. 334, Ann.Cas. 1914B 1093], but these support only the reference to severance of marital relations. Further, the language in *Estate of Boeson, supra,* is dictum, for although the appellant therein was said not to be barred by the decree, she was held barred upon other grounds. *Roberts* v. *Wehmeyer,* 191 Cal. 601, 615 [218 P. 22], suggests the law to be that 'community property may be divided only upon a dissolution of the marriage and . . . an interlocutory decree is not such a dissolution.' This statement of the law has not been followed and has also been characterized as dictum. (*Klebora* v. *Klebora, supra* [118 Cal.App. 613 (5 P.2d 965), p. 621].) Similarly, in *Radich* v. *Radich,* 64 Cal.App. 605, 607 [222 P 182], it was said by way of dictum that the court could not dispose of community property or a homestead until the final decree. Insofar as the language of these cases suggests that a court is without jurisdiction to make an unqualified disposition of property in an interlocutory decree of divorce, it is in opposition to the cases previously cited and must be disapproved.

"An immediate disposal of property upon an interlocutory decree of divorce is thus within the jurisdiction of the trial court. It has been held in certain cases that the trial court *should not* assign and dispose of the community or homestead property immediately by an interlocutory decree of divorce, but should wait until such time as the marriage is absolutely dissolved. (Citing cases.) These cases, however, dealt with direct appeals from interlocutory decrees in which error only was claimed and do not involve questions of jurisdiction or the effect of such decrees after the time for appeal has passed. Furthermore, it has been said that the court generally should determine the property issues at the same time it determines the issues with respect to the divorce, although the court may specify that its determination should not become effective or final until the entry of the final decree. (Citing cases.)"

The Leupe case has been consistently followed by the appellate courts of this state. (*Estate of Teel,* 34 Cal.2d 349, 353-354 [210 P.2d 1] ; *Warburton* v. *Kieferle,* 135 Cal.App.2d 278, 284-285 [287 P.2d 1].)

Judgment affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied December 14, 1956, and appellant's petition for a hearing by the Supreme Court was denied January 23, 1957.