402 N.W.2d 893 (1987)
In the Matter of the ESTATE OF Dorothy Seven McNAMARA, a/k/a Dorothy A. Seven McNamara, a/k/a Dorothy Ann Seven McNamara, a/k/a Dorothy A. Seven.
Susan DiFIORE, Petitioner and Appellee,
v.
John McNAMARA, Respondent and Appellant.
Civ. No. 11309.
Supreme Court of North Dakota.
March 26, 1987.
*894 Bjella, Neff, Rathert, Wahl & Eiken, Williston, for petitioner and appellee; argued by Vern C. Neff.
Rolfstad, Winkjer, McKennett & Stenehjem, Williston, for respondent and appellant; argued by Donna Murphy.
ERICKSTAD, Chief Justice.
John C. McNamara appeals from a county court judgment determining that Susan Halvorson DiFiore was entitled to inherit the entire North Dakota estate of Dorothy Seven McNamara. We affirm.
On April 22, 1926, Dorothy inherited an undivided 1/9th interest in land and minerals in Williams County, North Dakota. Dorothy had one child, Susan, who was born on September 24, 1942, during Dorothy's marriage to Rolf Halvorson. Dorothy and Rolf were subsequently divorced, and on May 20, 1965, Dorothy married the last of her four husbands, John, who was an attorney residing in California.
On July 1, 1966, John filed for divorce in California. John's complaint set forth the couple's community property acquired during their marriage, his separate property brought into the marriage, and Dorothy's separate property brought into the marriage, including the land and mineral interest in Williams County. John's complaint specifically stated that he did not claim any of the couple's community property or Dorothy's separate property. On December 1, 1966, an interlocutory divorce judgment was entered which provided, in relevant part:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each party shall be awarded his or her separate property as listed in the Complaint on file herein, that the community property shall go to defendant, and that plaintiff will endorse his interest in that certain insurance check in the amount of $401.65 to defendant; that defendant shall receive no alimony;"
Dorothy died intestate on December 9, 1966, before the expiration of the one-year waiting period for an interlocutory divorce judgment to become final under California law. On January 12, 1967, John petitioned the Orange County Superior Court for Letters of Administration as Dorothy's surviving spouse, naming Susan and Dorothy's mother, brothers, and sisters as heirs. At that time Susan was living in New York, and her attorney corresponded with John concerning the division of Dorothy's California estate. Dorothy's California estate proceeded to closing, and on September 25, 1968, Susan and John executed an agreement acknowledging that John was Dorothy's surviving spouse, that Susan was Dorothy's only issue, and that they would share equally in Dorothy's California estate with each receiving approximately $1,250. Neither this agreement nor the accounting for Dorothy's estate specifically referred to her property in Williams County.
On April 11, 1979, Susan filed a petition in Williams County seeking a distribution of Dorothy's North Dakota estate which consisted solely of the land in Williams County. On April 13, 1982, the personal representative petitioned the county court for confirmation of a proposed final distribution of that property to Susan. John filed an objection contending that, as Dorothy's surviving spouse, he was entitled to inherit one-half of that property.
After a stipulation of facts by the parties and hearing on May 28, 1982, the court rendered its decision on January 24, 1983, awarding all of the land to Susan. The court subsequently set aside its decision *895 because the parties had stipulated that they wanted to present their case for a full hearing when they appealed to the district court for a trial de novo, and, effective January 1, 1983, the Legislature repealed the statutory provisions for an appeal and trial de novo in the district court and provided for an appeal from county court directly to the supreme court. 1981 N.D.Sess.Laws, Ch. 319. A second hearing was held on November 20, 1984, but the judge who presided over that hearing died before rendering a decision. The case was reassigned, and the parties stipulated to the court rendering a decision upon the record of the previous proceedings. The court found that John had waived and renounced his right to share in Dorothy's estate pursuant to Section 30.1-05-04 [Uniform Probate Code § 2-204], N.D.C.C., and awarded Susan the Williams County property. John has appealed.
The ultimate issue raised in this appeal is whether or not John was entitled to one-half of Dorothy's North Dakota estate. The resolution of that issue requires us to initially examine the legal effect and ramifications stemming from Dorothy's death during the one-year waiting period between the interlocutory divorce judgment and a final divorce judgment.
The purpose of the one-year waiting period[1] between an interlocutory divorce judgment and a final judgment is to promote reconciliation between the parties, and, during that period, the couple's marriage is not terminated and they continue to be husband and wife. Hurst v. Hurst, 227 Cal.App.2d 859, 39 Cal.Rptr. 162 (Dist.Ct.App.1964); Borg v. Borg, 25 Cal.App.2d 25, 76 P.2d 218 (Dist.Ct.App.1938). Nevertheless, the divorce court has the authority to render an interlocutory divorce judgment which distributes the couple's property immediately. Fritschi v. Teed, 213 Cal.App.2d 718, 29 Cal.Rptr. 114 (Dist.Ct.App.1963). The death of one of the spouses during the interlocutory period abates the action for dissolution of the marriage and itself terminates the marriage; however, that termination relates to the status of the parties and not to property rights theretofore adjudicated. McClenny v. Superior Court of Los Angeles County, 62 Cal.2d 140, 41 Cal.Rptr. 460, 396 P.2d 916 (1965); Klebora v. Klebora, 118 Cal.App. 613, 5 P.2d 965 (Dist.Ct.App.1931). Insofar as an interlocutory divorce judgment adjudicates the property rights of the parties, it is treated as a contract between them. Klebora v. Klebora, supra.
In McClenny, supra, the divorce court entered an interlocutory divorce judgment reserving its power to determine the division of the couple's community property. The California Supreme Court held that the wife's death during the interlocutory period did not deprive the divorce court of jurisdiction to effectuate its prior adjudication of property rights in the interlocutory divorce judgment. The court said that the death of a spouse during the interlocutory period did not "liquidate the property rights which crystallized in the interlocutory decree." Id. 41 Cal.Rptr. at 462, 396 P.2d at 918. In determining that the property rights had "crystallized" in that case, the court relied upon Klebora v. Klebora, supra, and Darter v. Magnussen, 172 Cal.App.2d 714, 342 P.2d 528 (Dist.Ct.App.1959).
In Klebora v. Klebora, supra, 118 Cal.App. at 618, 5 P.2d at 967, the court held that, in the absence of an appeal or motion for relief under Cal. Code of Civ.Proc. § 473,[2] an interlocutory divorce judgment which dealt with the couple's property became final as to those rights and the death of the husband did not affect those rights:
"It is settled in this state that, when an interlocutory decree deals solely with the marital status of the parties, and is silent as to their property rights, the death of one of the spouses before the time for a final decree renders the interlocutory decree functus officio.... The death dissolves the marriage.... But, *896 `when the interlocutory decree deals with the status of the parties and also with the property rights of the parties, the case is quite different, and the interlocutory decree, if not vacated in the mode prescribed by law, becomes a conclusive decree as to their property rights.'" [Emphasis in original.] [Citations omitted.]
In Darter v. Magnussen, supra, the divorce court reserved jurisdiction in the interlocutory divorce judgment to render an order regarding the sale of certain property. The wife died during the interlocutory period and thereafter the husband attempted to modify a provision in the interlocutory divorce judgment which awarded a sizeable portion of the couple's community property to the wife. The appellate court concluded that the death of the wife did not affect the divorce court's power to take necessary action to enforce property rights adjudicated by the interlocutory divorce judgment. The court held that the interlocutory period terminated upon the wife's death and, in the absence of an appeal or attack under Cal.Code of Civ.Proc. § 473, the interlocutory divorce judgment was a conclusive adjudication and res judicata with respect to awards of community property made therein.
In this case the interlocutory divorce judgment was not silent as to the couple's property rights; rather it dealt with their property rights and awarded Dorothy their community property and her separate property brought into the marriage, including the Williams County land. In this respect the interlocutory divorce judgment specifically incorporated John's complaint which listed the couple's community property and Dorothy's separate property, including the Williams County land, and which stated that John made no claim to any of that property. Additionally, no appeal was taken from the interlocutory divorce judgment and no motion for relief under Cal. Code of Civ.Proc. § 473, was made. We believe the language of John's complaint and the interlocutory divorce judgment incorporating that complaint was sufficient to crystallize Dorothy's property rights within the meaning of the California law even though the interlocutory divorce judgment did not specifically refer to Dorothy's death or to a waiver of the right to inherit by John. The interlocutory divorce judgment was contractual in nature and, in the absence of an appeal or motion for relief under Cal. Code of Civ.Proc. § 473, became a conclusive adjudication of the couple's property rights thereby depriving John of the right to inherit Dorothy's North Dakota estate.[3]
Nevertheless, John contends that Susan is barred by the doctrines of collateral estoppel and res judicata from collaterally attacking the order of the California probate court because, after being informed of the existence of the interlocutory divorce judgment, she acknowledged that John was Dorothy's surviving spouse and agreed that John was entitled to one-half of Dorothy's California estate. We disagree.
Initially we note that the North Dakota land was not, and could not have been, a part of the California probate action.[4] The earlier cited California law establishes that the couple's marital status was not terminated by the interlocutory divorce *897 judgment, and, at the time of Dorothy's death, John was her spouse under that law. However, because the interlocutory divorce judgment dealt with the couple's property, it was contractual in nature and became a conclusive adjudication of the couple's property rights. The dispositive issue is not John's status as Dorothy's spouse, but his right to Dorothy's property which was determined by the interlocutory divorce judgment and was conclusive and res judicata with respect to that issue. Estate of Williams, 36 Cal.2d 289, 223 P.2d 248 (1950). Thus, the principles of res judicata preclude John from seeking a redetermination of property rights adjudicated in the interlocutory divorce judgment which became final when no appeal was taken and no action was taken to attack the interlocutory divorce judgment under Cal. Code of Civ.Proc. § 473.
Moreover, we do not believe that Susan is precluded from inheriting the entire North Dakota estate because of her failure to contest the probate of Dorothy's California estate or her acknowledgement in that action that John was Dorothy's surviving spouse. For whatever reason Susan may not have wanted to contest the probate of Dorothy's California estate. Additionally, John testified that the actual terms of the interlocutory divorce judgment were not brought to the attention of Susan or the California probate court. Under these circumstances we conclude that Susan is not barred by the doctrines of res judicata or collateral estoppel from inheriting Dorothy's entire North Dakota estate.
The judgment is affirmed.
GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.
NOTES
[1] California's current statutory provisions require a six-month waiting period. Cal.Civ.Code §§ 4512, 4514 (West 1983).
[2] Cal.Code of Civ.Proc. § 473 pertains to relief from a judgment because of mistake, inadvertence, surprise, or excusable neglect.
[3] Because the trial court's decision is sustainable by our resolution of this issue, we need not decide whether or not the trial court correctly concluded that the waiver provisions of the Uniform Probate Code, effective July 1, 1975, applied to Dorothy's estate even though she died in 1966, and John's argument that, as a surviving spouse, he had a vested substantive right to inherit Dorothy's estate. See Matter of Estate of Kjorvestad, 375 N.W.2d 160, 169-170 (N.D.1985) [procedural modes, as distinguished from substantive rights, are not vested and are subject to repeal, modification or change]. We note, however, that the right to waive property rights existed before the enactment of the Uniform Probate Code. Gajewski v. Bratcher, 221 N.W.2d 614 (N.D.1974); Wellens v. Beck, 103 N.W.2d 281 (N.D.1960).
[4] Section 30-21-32, N.D.C.C., in effect at the time of Dorothy's death, provided:

"Real property not disposed of by willTestamentary disposition of real property regulated by domestic law. The validity and effect of a testamentary disposition of real property situated within the state, or of an interest in real property so situated, which would descend to an heir of an intestate, and the manner in which such property or such an interest descends when it is not disposed of by will, are regulated by the laws of this state without regard to the residence of the decedent. Except when special provision is made otherwise by law, the validity and effect of a testamentary disposition of any other property situated within the state, and the ownership and disposition of such property when it is not disposed of by will, are regulated by the laws of the state or country of which the decedent was a resident at the time of his death."